UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: _____

KRISTIAN ZAMBER,
on behalf of himself and all others
similarly situated,

    Plaintiffs,

v.                                            **CLASS ACTION**

AMERICAN AIRLINES, INC.,
a Delaware Corporation,

    Defendant.
_____/

**COMPLAINT**

Plaintiff Kristian Zamber ("Plaintiff"), on behalf of himself and all others similarly situated, files this Complaint against Defendant, American Airlines, Inc., a Delaware corporation ("American" or "Defendant"), and alleges as follows.

**INTRODUCTION**

1. This is a class action lawsuit filed to redress injuries that Plaintiff and a class of consumers have suffered, and will continue to suffer, as a result of American's deceptive practices relating to its presentation of trip insurance as a pass-through fee paid to an ostensibly independent third party insurer, when, in reality, it receives an undisclosed kickback from every policy sold.

2. American requires customers who purchase airline tickets on its website to elect whether to purchase a trip insurance policy from an independent insurer, purportedly to "protect" customers in the event their travel plans change.

3. Despite making trip insurance policies available to customers on its website, American does not hold itself out as the seller of trip insurance. In fact, American is not a licensed insurer or insurance agent in the State of Florida.

4. American aggressively markets these trip insurance policies to its customers, while concealing their profit interest in the sale of the product. For example, customers are required to make an insurance election, as they are unable to proceed with purchasing their airline tickets on American's website until they make a choice on whether to purchase a trip insurance policy. The customer cannot simply ignore the insurance offering and move on to purchasing a ticket.

5. When purchasing a ticket, the customer must check either a "yes" or "no" box before American allows them to complete the purchase of their ticket. The "yes" option is highlighted in bold type and placed above the box for "no," which does not appear in bold type. In the "yes" section where a customer can purchase an insurance policy, American places a checkmark in bright green typeface, followed immediately thereafter by the word "Recommended," also in bright green typeface.

6. Following the bright green checkmark and "Recommended" line, American includes a quote from U.S. News & World Report, Oct 2015, which reads "It's a smart idea to consider investing in travel insurance." An example of this language and marketing appears in Exhibit 1.

7. Despite aggressively marketing these trip insurance policies on its website, American does not disclose that it receives a profit based on the sale of the insurance. Indeed, American affirmatively leads the consumer to believe that it has no profit participation in the sale

of this insurance by, among other things, expressly disclaiming any role in the actual provision of the insurance that its customers purchase.

8. Defendant states "[t]his insurance is offered by a third party, Allianz Global Assistance, not American Airlines. Plans underwritten by Jefferson Insurance Company or BCS Insurance Company. Recommended by AGA Service Company, the licensed producer and administrator of this plan." (emphasis added). Therefore, American denies that it is involved in the insurance, and even denies that it is the party that is offering the insurance to the consumer.

9. Despite these denials and representations to the customer that it plays no role in the provision or administration of the insurance policies, sales of the policies are in fact a hidden profit center for American, misrepresented to the customer as a "pass through" charge. American falsely represents to its customers that, when they purchase an insurance policy, the funds to cover the policy's cost are transmitted to Allianz Global Assistance, who American identifies as the company offering the policy for sale to the customer. Instead, American profits off of each policy a customer purchases on its website.

10. In short, American has engaged in a pattern of unlawful profiteering, deceit and self-dealing with regard to the trip insurance policies it promotes by misrepresenting its role to consumers.

**PARTIES, JURISDICTION, AND VENUE**

11. Plaintiff, Kristian Zamber, is, and at all material times was, an individual who resides in and is a citizen of Sarasota County, Florida. Plaintiff purchased a trip insurance policy from Allianz on American's website on March 20, 2016.

12. Defendant, American Airlines, Inc., is a Delaware corporation with its principal place of business in Texas. It does business regularly throughout the United States, including the state of Florida.

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this is an action for a sum exceeding $5,000,000.00, exclusive of interest and costs, and in which at least one class member is a citizen of a state different than the Defendant.

14. This Court has personal jurisdiction over American because it continuously and systematically operates, conducts, engages in, and carries on business in Florida. Moreover, American purposefully avails itself of Florida's consumer market through the advertisement, promotion, and sale of airline tickets and trip insurance policies in Florida. Pursuant to Florida's long-arm statute, Fla. Stat. § 48.193, this Court has personal jurisdiction over American.

15. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b) and § 1391(c) because Defendant resides in this district for purposes of the statute, as American is subject to the personal jurisdiction of this Court for purposes of this action. Moreover, Defendant's wrongful acts in the district have impacted the general public of this district, and the ends of justice require that parties residing in other districts be brought before this Court.

## FACTUAL ALLEGATIONS

16. American operates hundreds of daily flights to and from fifteen different airports in Florida. As part of its business, American sells tickets to consumers through its website, www.aa.com.

17. When a consumer visits American's website, the site allows the consumer to select his or her preferred destination and travel dates.

18. Upon the consumer's selection of his or her specific flights, American's website provides the customer with the price to purchase the selected flights.

19. Before the customer completes his or her purchase, American's website requires customers paying by credit card to make an election regarding purchasing a trip insurance policy with a third-party insurance provider.

20. American markets the third-party trip insurance to its customers in a uniform fashion—each customer sees the same marketing language when purchasing a ticket.

21. Before selecting a payment method, American's website tells customers they may purchase a trip insurance policy on the website if they pay with a credit card. Specifically, Defendant states the following: "Enjoy greater peace of mind with travel insurance from Allianz Global Assistance. Currently, Trip Insurance is only available for purchase with your airline ticket prior to the day of departure, by U.S. residents who pay for travel with American Express, Diners Club, Discover, MasterCard or VISA. If you are a U.S. resident and were unable to purchase trip insurance at this time, you may still be able to purchase it by contacting Allianz Global Assistance directly at 1-800-628-5404."

22. Through this language American affirmatively represents that the insurance is sold by "Allianz Global Assistance" as opposed to American itself.

23. Once a customer elects to purchase their ticket with either an American Express, Diners Club, Discover, Mastercard or VISA credit card, American requires the customer to affirmatively select, prior to the completion of their purchase, whether they would like to purchase a trip insurance policy. *See* Exhibit 1. The customer cannot buy a ticket without making this choice. Featured prominently at the top of this selection page is a graphic stating "Allianz Global Assistance."

24. As the customer faces this mandatory choice, American's website proceeds to aggressively market the trip insurance policies. A customer must check either a "yes" or "no" box before American allows them to complete the purchase of their ticket. The "yes" option is highlighted in bold type and placed above the box for "no," which does not appear in bold type. *See id*.

25. In the "yes" section where a customer can purchase an insurance policy, American places a checkmark in bright green typeface, followed immediately thereafter by the word "Recommended," also in bright green typeface. *See id*.

26. Following the bright green checkmark and "Recommended" line, American includes a quote from U.S. News & World Report, Oct 2015, which reads "It's a smart idea to consider investing in travel insurance." *Id*. This is intended to create the impression that the trip insurance is in the consumer's best interest – while hiding the fact that American is pushing the product because it is in American's financial interest to generate sales. In other words, the consumer is deceived into believing that American is acting in the consumer's best financial interest, and not its own.

27. Underneath that section, without any bold-faced type, is an option for the customer to select "no" to the purchase of trip insurance, where American says the following: "No, I understand by declining coverage I am responsible for all cancellation fees and expenses." *Id*.

28. After the section wherein it portrays the trip insurance policies as something in the consumer's best financial interest, American proceeds to conceal its financial motivation in pushing the product by formally disclaiming any role in the trip insurance policies being sold on its website.

29. Specifically, American represents that a third party is providing the insurance, not American itself. Defendant states "[t]his insurance is offered by a third party, Allianz Global Assistance, *not American Airlines*. Plans underwritten by Jefferson Insurance Company or BCS Insurance Company. Recommended by AGA Service Company, the licensed producer and administrator of this plan." *See id*. (emphasis added).

30. Indeed, American cannot sell insurance to the consumer because it is not licensed as an insurer or insurance agent in the State of Florida.

31. Further enhancing the idea that the trip insurance is a pass through is the presentation of the invoice. When a customer elects to purchase a trip insurance policy on Defendant's website, the cost of the policy is not included in the customer's bill for the purchased airfare, rather the customer pays the insurance cost separately. In contrast, when a customer elects to purchase from Defendant a trip "add on," such as a more desirable seat, the cost of that is included in the fare price. The lack of inclusion of the trip insurance cost in the customer's airfare purchase price further represents to the consumer that American treats the insurance cost as a "pass through" charge, not as a profit vehicle for itself.

32. Additionally, if a consumer seeks to have questions answered about the insurance offered on American's website, Defendant's website categorically tells the customer that American has no involvement in the insurance sold. For example, in a portion of Defendant's website titled "Trip insurance," American refers to the insurance policies as "Allianz Global Assistance trip insurance for U.S. residents." Exhibit 2 at 1. Immediately after that description, American's website lists the "Top reasons to buy trip insurance." *Id*. It then includes a section titled "Satisfaction guarantee," telling customers they are purchasing a policy "from Allianz Global Assistance." *Id*. at 2.

33. Another section of American's website, labeled "Reservations & tickets FAQ's," also affirmatively disclaims any role in the insurance a customer purchases on Defendant's site. Specifically, American answers the question of "Will I get a confirmation email?" as follows: Yes, if you provide your email address then the *trip insurance provider* will email it to you." Exhibit 3 at 9 (emphasis added). Defendant then answers the question of "Why isn't my trip insurance purchase displayed in my itinerary?" with the following: "Trip insurance products are sold by third-party insurance providers, *not American*, so you'll receive a separate confirmation. All policy documentation will be sent directly to you from the insurance provider." *Id*. at 10.

34. These statements to the consumer reinforce the representation of the trip insurance as a "pass through" charge, one where American has no role in the provision of the product nor any profit interest.

35. After a customer elects to purchase a trip insurance policy and proceeds to complete the purchase of an accompanying airfare, Allianz Global Assistance, not American, sends the customer an email containing a copy of the purchase insurance policy. *See* Exhibit 4. Nowhere in that communication or accompanying insurance policy is there any reference to American having a role in the provision of the insurance. *See* Exhibit 5. Instead, the "Letter of Confirmation" that the customer receives containing the insurance policy has "Jefferson Insurance Company" as the header.

36. By disclaiming any role in the insurance policies it is making available on its website and setting out the cost of a policy as a separate charge to the consumer, American represents the cost of the trip insurance policies as a "pass through" charge, where Defendant simply collects the money for the insurance policy from the consumer and forwards it on to the actual insurance provider.

37. In reality, and completely unbeknownst to its customers, the trip insurance is a hidden profit center for Defendant, as American receives for itself a portion of the funds for every trip insurance policy its customers purchase.

38. Defendant, instead of disclosing its profit interest in the trip insurance policies sold on its website, attempts to disguise its financial interest by representing the cost of an insurance policy as a "pass through" charge. Indeed, American affirmatively tells customers that insurance policies and charges aren't included with their itineraries because it is a third-party's product, all without any suggestion or indication that Defendant is retaining a portion of this charge for itself. This is in contrast to other charges that American offers on its website, such as more desirable seats and early boarding rights, where American bundles the cost of these optional fees into the overall price of a customer's ticket, thereby disclosing to the customer Defendant's profit interest.

39. The trip insurance program on Defendant's website represents an illegal kickback scheme, one in which American deliberately hides its role and profit interest in the insurance policies sold on its website.

40. On March 20, 2016, Plaintiff purchased a trip insurance policy on Defendant's website. Mr. Zamber received an email from the insurance provider attaching his policy, neither of which referenced American. *See* Exhibits 4 and 5.

41. American has never disclosed to Kristian Zamber, or any of the class members, the true nature of its relationship with Allianz Global Assistance, Jefferson Insurance Company, BCS Insurance Company, or AGA Service Company. Specifically, Defendant has not disclosed the fact that it receives a substantial kickback on the policies made available on its website.

**CLASS ACTION ALLEGATIONS**

42. Plaintiff brings this Complaint as a class action pursuant to Federal Rule of Civil Procedure 23.

**Class Definition**

43. Plaintiff seeks to represent the following class:

All persons who purchased a trip insurance policy within the applicable limitations period (the "Class Period").

Excluded from this class are American, its affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

44. The members of the class number in the thousands and joinder of all class members in a single action is impracticable.

45. This class action is brought pursuant to Rule 23(b)(2) because American has acted or refused to act on grounds generally applicable to all the members of the class, thereby making final injunctive relief or declaratory relief concerning the class appropriate.

46. This class action is brought pursuant to Rule 23(b)(3) because the questions of law or fact common to Zamber's claim and the class members' claims predominate over any question of law or fact affecting only individual class members.

47. American has subjected Plaintiff and the members of the Class to the same unfair, unlawful, and deceptive practices and harmed them in the same manner. The conduct described above is American's standard business practice.

A. **Numerosity**

48. The individual class members are so numerous that joinder of all members in a single action is impracticable. American operates thousands of flights a day, and upon information and belief, it has sold thousands of trip insurance policies in during the Class Period.

49.     While Plaintiff estimates the Proposed Class numbers in the thousands, the exact number of class members, as well as the class members' names and addresses, can be identified from American's business records.

**B.     Commonality/Predominance**

50.     Common questions of law and fact exist as to Zamber's and the Class members' claims. These common questions predominate over any questions solely affecting individual Class members, including, but not limited to, the following:

a.     Whether American engaged in a deceptive and unfair business practice by misleading the Class about its financial interest in making available trip insurance policies and its receipt of a kickback;

b.     Whether the representations made and insurance premiums collected by American would lead the reasonable consumer to believe it was a pass-through charge;

c.     Whether American receives undisclosed kickbacks, commissions, or fees from the sale of trip insurance;

d.     Whether American manipulated the Class through trip insurance products in order to maximize its own profits at the expense of the Class;

e.     Whether and to what extent the Defendant's conduct has caused injury to the Plaintiff and the Class members;  and

f.     Whether American unlawfully enriched itself at the expense of the Class.

**C.     Typicality**

51.     Zamber's claims are typical of the putative Class members' claims because of the similarity, uniformity, and common purpose of American's unlawful conduct.  Plaintiff, like all Class members, was damaged through his payment of money that American misrepresented as a "pass through" charge to the insurance company, when in fact American enriched itself in this process.

52.     Each class member has sustained, and will continue to sustain, damages in the same manner as Zamber as a result of American's wrongful conduct and willful nondisclosures.

**D.     Adequacy**

53.     Zamber will fairly and adequately protect and represent the interest of each member of the Class, because he has suffered the same wrongs as the Class Members.

54.     Zamber is fully cognizant of his responsibilities as Class Representative and has retained León Cosgrove, LLC to prosecute this case.  León Cosgrove, LLC is experienced in complex class action litigation, including litigation related to unfair and deceptive trade practices, and has the financial and legal resources to meet the costs of and understand the legal issues associated with this type of litigation.

55.     Class action treatment is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein, because such treatment will permit a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender.

LEÓN COSGROVE, LLC
255 ALHAMBRA CIR. | SUITE 424 | CORAL GABLES, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

**E.     The Prerequisites of Rule 23(b)(2) Are Satisfied.**

56.     The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. Pro. 23(b)(2) exist as American has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

57.     Defendant's actions are generally applicable to the Class as a whole, and Plaintiff seeks, among other things, equitable remedies with respect to the Class as a whole.

**F.     The Prerequisites of Rule 23(b)(3) Are Satisfied.**

58.     The questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.

59.     The likelihood that individual members of the Class will prosecute separate actions, and their interest in so doing, is small due to the extensive time and considerable expense necessary to conduct such litigation.

60.     This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class. The Plaintiff knows of no difficulty likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**COUNT I**
**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**

61.     Plaintiff re-alleges paragraphs 1 through 60 as if fully set forth herein and further alleges the following.

62. This Count is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

63. At all times material, Plaintiff and all members of the class were consumers within the meaning of Section 501.203, Fla. Stat., and are entitled to relief under FDUTPA in accordance with Section 501.211, Fla. Stat.

64. At all times material, American conducted trade and commerce within the meaning of Section 501.203, Fla. Stat.

65. American has engaged in unlawful schemes and courses of conduct through one or more of the unfair and deceptive acts and practices alleged above.

66. The concealment and omissions of material facts and misrepresentations and deceptions alleged in the preceding paragraphs occurred in connection with American's trade and commerce in Florida.

67. American's unfair and deceptive acts and practices violate FDUTPA, Section 501.201 and 501.211, Fla. Stat.

68. As a direct and proximate result of American's FDUTPA violations, Plaintiff and the class have been damaged in an amount to be proven at trial.

69. Plaintiff and the class are entitled to actual damages, declaratory and injunctive relief, attorneys' fees and costs, and all other remedies available under FDUTPA.

### COUNT II
### UNJUST ENRICHMENT

70. Plaintiff re-alleges paragraphs 1 through 60 as if fully set forth herein and further alleges the following,

71. This is a count for unjust enrichment.

72. Plaintiff and each member of the class conferred a benefit on Defendant through their payment for trip insurance with Allianz Global Assistance, allowing American to enrich itself to the detriment of the Class.

73. Defendant appreciated, accepted and retained this benefit, as it garnered substantial profits by virtue of its insurance kickback scheme.

74. Under the circumstances, it would be unjust and inequitable to allow the Defendant to retain this benefit, as it was obtained through false and misleading representations.

75. Plaintiff and the Class suffered damages as a result of Defendant's unjust enrichment.

**PRAYER FOR RELIEF**

Named plaintiff and the plaintiff class request the following relief:

a. Certification of the class;

b. A jury trial and judgment against defendant American;

c. An order requiring the Defendant to make full disclosure to consumers of its retention of trip insurance premiums sold on its website and the amount of the kickback it receives;

d. The cost of suit, including reasonable attorney's fees, in accordance with FDUTPA;

e. General, actual, and compensatory and exemplary damages in an amount to be determined at trial;

  f. Restitution of all insurance premiums paid by Plaintiff and members of the Class, as a result of the wrongs alleged herein, in an amount to be determined at trial;

  g. Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

  h. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as to all claims so triable.

Dated: September 12, 2016       Respectfully submitted,

                */s/ Alec H. Schultz*
                Scott B. Cosgrove, Esq.
                 Fla. Bar No. 161365
                Alec H. Schultz, Esq.
                 Fla. Bar No. 35022
                Jeremy Kahn, Esq.
                 Fla. Bar No. 105277
                LEÓN COSGROVE LLC
                255 Alhambra Circle, Suite 800
                Coral Gables, Florida 33134
                Tel: 305.740.1975
                Email: scosgrove@leoncosgrove.com
                Email: aschultz@leoncosgrove.com
                Email: jkahn@leoncosgrove.com

                *Counsel for Zamber and the Class*