UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:16-cv-23901-MARTINEZ/GOODMAN

KRISTIAN ZAMBER, on behalf of
himself and all others similarly situated,

    Plaintiff,

vs.

AMERICAN AIRLINES, INC.,

    Defendant.
_____/

## AMERICAN AIRLINES, INC.'S MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), defendant American Airlines, Inc. ("American") respectfully moves to dismiss the class action complaint brought by putative class member Kristian Zamber ("Mr. Zamber" or "Plaintiff"), and states:

## INTRODUCTION

Plaintiff has failed to demonstrate that he suffered a concrete and particularized injury to himself and thus lacks standing to assert claims against American. As such, the Court is without subject-matter jurisdiction. Moreover, Plaintiff's claims are preempted by the Airline Deregulation Act of 1978 ("ADA"). The ADA preempts state law claims, particularly like those asserted here, that relate to a "price, route, or service of an air carrier." Finally, were the Court to reach the sufficiency of Plaintiff's claims for unjust enrichment and violation of Florida's Unfair and Deceptive Trade Practices Act ("FDUTPA"), Plaintiff has failed to allege any legally cognizable wrongdoing by American. Accordingly, Mr. Zamber simply has not stated a claim upon which relief can be granted and the Complaint must be dismissed for this reason as well.

# FACTUAL BACKGROUND[1]

American is an airline that operates hundreds of daily flights to and from airports throughout Florida (and indeed across the world). Compl. ¶ 16, ECF No. 1. One way in which customers can make reservations for travel on American flights is by visiting its website at www.aa.com. *Id.* Once a customer chooses her or his preferred travel dates and destinations, the customer can select specific flights and a price will be displayed. *Id.* at ¶¶ 17–18.

During the online booking process, customers are presented with an option to purchase travel insurance from a third-party insurance provider. *Id.* at ¶ 19. There is no dispute that American discloses to customers that trip insurance "is offered by a third party, Allianz Global Assistance, not American Airlines" and that these insurance plans are "underwritten by Jefferson Insurance Company or BCS Insurance Company." *Id.* at ¶ 29. It is also undisputed that if a customer chooses to purchase the trip insurance offered through the third-party insurance company, "the cost of the policy is <u>not</u> included in the customer's bill for the purchased airfare, rather the customer pays the insurance cost separately." *Id.* at ¶ 31(emphasis added).

Mr. Zamber claims he purchased a trip insurance policy after booking an American Airlines' flight. *See id.* at ¶ 40. Following his purchase, he received a confirmation from Allianz Global Assistance ("Allianz"), attaching his policy. *See id.* Mr. Zamber paid a total of $24 for his trip insurance policy. Compl. at Ex. 5, ECF No. 1-5. For this amount, Mr. Zamber received the following benefits:

---

[1] American disputes the material allegations underlying Plaintiff's claims. Because the Court must accept the allegations as true for the purposes of ruling on a motion to dismiss, the factual background set forth in this motion reflects only Plaintiff's version of this case. American will challenge these allegations at the appropriate time.

| Benefit | Coverage Limits |
|---|---|
| Baggage Delay Coverage | $500.00 |
| Emergency Medical Transportation | $50,000.00 |
| Emergency Medical and Dental | $10,000.00 |
| Trip Cancellation Protection | $300.00 |
| Travel/Trip Delay Coverage | $500.00 |
| Trip Interruption Protection | $1,500.00 |

*Id.*

There is no allegation in the Complaint that Mr. Zamber ever made a claim under his policy or that any claim filed by him was not paid by Allianz. *See generally* Compl., ECF No. 1. Nor is there any allegation suggesting the policy he was issued differed in any respect from the policy he contracted with Allianz to purchase. *See generally id.* Nor is there any allegation that Mr. Zamber was charged an amount different from what he agreed to pay.

Instead, Plaintiff brings this putative class action claiming only that American received some unspecified compensation from Allianz for each trip insurance policy sold. *See generally id.* The Complaint largely rests on the incorrect assumption that under FDUTPA American is required to disclose whether it receives any remuneration if a trip insurance policy is purchased. American now moves to dismiss.

## LEGAL STANDARD

**Standing**. Questions of standing implicate a court's subject-matter jurisdiction and "must be addressed prior to and independent of the merits of a party's claims." *DiMaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1301 (11th Cir. 2008) (citation omitted); *Gagliardi v. City of Boca Raton*, No. 16-cv-80195, 2016 WL 4429638, at *4 (S.D. Fla. Jul. 21, 2016). The party invoking the court's subject-matter jurisdiction bears the burden of proving the essential elements of standing. *Id.* "For purposes of ruling on a motion to dismiss for want of standing," the Court

"must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

**Preemption**. Plaintiff's claims are expressly preempted by the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713. Courts have consistently held that state law claims, such as for unjust enrichment and those arising under consumer protection laws like FDUTPA, are preempted under the ADA. When a plaintiff's state-law claims are preempted by federal law, the plaintiff has failed to state a cause of action and dismissal is the appropriate remedy. *See, e.g.*, *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984).

**Failure to State a Claim**. Plaintiff's claims also contain substantive defects rendering them subject to dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Under Rule 8, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To satisfy the Rule 8 pleading requirements, a complaint must provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Steinberg v. Ateeco, Inc.*, No. 15-CIV-60973, 2015 WL 11181732, at *2 (S.D. Fla. 2015). Thus, in *Twombly*, the Supreme Court stressed the necessity of requiring plausible, non-conclusory allegations establishing each element of a claim. *See Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level"—setting forth a claim that is plausible on its face. *Id.* "[L]abels and conclusions" do not suffice. *Id.*

In evaluating the plausibility of allegations, courts must also consider whether the allegations comport with context and common-sense realities. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common

sense."). Even with well-pleaded facts, a complaint must be dismissed if those facts "do not permit the court to infer more than the mere possibility of misconduct [because] the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). Where a plaintiff has failed to state a cause of action and amendment would be futile, the Court should dismiss the complaint with prejudice. *See, e.g.*, *Frone v. City of Riverdale*, 521 F. App'x 789, 792 (11th Cir. 2013) (providing that leave to amend a complaint need not be given where amendment would be futile); *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (same).

## ARGUMENT

### I.     Lack of Standing and Federal Preemption Require Dismissal of the Complaint.

There are two material deficiencies with the Complaint—Plaintiff's lack of standing and ADA preemption—that render it subject to dismissal with prejudice. Each is discussed below.

#### A.     Plaintiff Lacks Article III Standing to Bring a Claim.

Article III, § 2 of the Constitution establishes that for subject matter jurisdiction to exist in federal court there must be a true "case or controversy." An essential element of this requirement is that there must be an injured plaintiff. Plaintiff Zamber, however, has failed to allege facts that would demonstrate a concrete and particularized injury that he himself suffered. Absent such an injury, which the Complaint makes clear he cannot establish, he lacks standing and the Complaint must be dismissed.

The Supreme Court has explained that "the irreducible constitutional minimum" of standing requires that three elements be satisfied. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547

(2016); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The plaintiff bears the burden of "clearly . . . alleging facts demonstrating" each of these elements in the complaint. *Spokeo*, 136 S. Ct. at 1547; *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

The first element—injury in fact—requires a plaintiff to show an invasion of a protected interest that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548. A "particularized" injury is one that affects a plaintiff personally and in an individualized way. *Id.* But satisfying the particularization requirement alone is not enough. For an injury in fact to exist, it must <u>also</u> be "concrete." *Id.* A "concrete" injury means the injury "must be 'de facto'; that is, it must actually exist." *Id.*

The mere existence of a statutory right and alleged violation, as Plaintiff asserts here, does *not* by itself satisfy the concreteness requirement. In other words, matters such as bare procedural violations of a statute do not suffice because, for example, "not all inaccuracies cause harm or present any material risk of harm." *Id.* at 1550. Rather, a "concrete" injury is one that "must actually exist." *Id.* at 1548. It must be "'real', and not 'abstract.'" *Id.* Importantly, a class action does not change this analysis; every class representative must meet these same requirements. *Id.* at 1547 n.6; *see also Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976); *Zia v. CitiMortgage, Inc.*, No. 15-cv-23026, 2016 WL 5369316, at *1 (S.D. Fla. Sept. 26, 2016).

Here, Mr. Zamber has failed to allege an injury in fact for both the FDUTPA and unjust enrichment claims that are traceable to any conduct by American. First, Plaintiff has not satisfied the requirement that his injury is particularized. There are no allegations in the complaint showing how Mr. Zamber's injury (if any) affected him in an individualized way. The allegations of the Complaint instead focus on American and its purported receipt of

compensation for trip insurance policies purchased by travelers through Allianz. *See* Compl. at ¶¶ 16–41. The two factual references to Mr. Zamber concerning the trip insurance are only that he received an email from Allianz attaching a copy of his trip insurance policy and that American never disclosed to him or any class member that it allegedly receives a "kickback" when trip insurance is purchased. Compl. at ¶¶ 40–41. An email from Allianz—not involving American—assuredly cannot establish any injury suffered by Mr. Zamber and Plaintiff does not contend otherwise.

Likewise, the reference to information not disclosed by American also fails to establish injury in fact. Plaintiff has not alleged any facts whatsoever showing he received any less insurance coverage than he contracted for with Allianz. Nor has he alleged that the coverage he purchased was worth less than he paid. And, Plaintiff certainly has not alleged that a claim was not paid (which in any case would be an issue to address with Allianz and not American). Plaintiff thus has not shown he actually suffered an injury. *See, e.g., Rivera v. Wyeth-Ayerst Labs*, 283 F.3d 315, 320 (5th Cir. 2002) (dismissing plaintiff's claims for lack of standing because she "paid for an effective pain killer, and she received just that—the benefit of her bargain"). At best, Plaintiff's FDUTPA claim here asserts a "bare violation of a statute"—which is not a violation at all. *See, e.g.*, *Zia*, 2016 WL 5369316 at *4–5 (holding plaintiff lacked standing where he alleged only that mortgage company failed to timely provide documents reflecting discharge of mortgage where there was no allegation that title was clouded or that plaintiff was prohibited or deterred from transferring property); *see also Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 834 (7th Cir. 2014) (deciding under Illinois Consumer Fraud Act that no actual injury existed because plaintiff willingly paid for full price of concert ticket—including challenged parking fee charge—and there "was no evidence that the concert was worth any less

than the face price of the ticket"). But, as shown below, none of these claims can survive, even if Plaintiff had standing, because they are preempted by the ADA.

Second, not only has Plaintiff Zamber failed to allege "any concrete consequence" <u>to him</u>, he has also failed to establish that that any wrongful conduct is traceable to American. Put differently, there are no allegations establishing any causal connection between a concrete and particularized injury (which is lacking here) and the conduct of American complained of by Mr. Zamber. The Complaint simply fails to establish a "but for" relationship between the injury (because there is none) and the alleged unlawful conduct of failing to disclose information (because American had no obligation to do so). *See, e.g.*, *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 514 (D.C. Cir. 2016) (finding plaintiff did not have standing to sue for violation of consumer protection law where the only harm asserted was that plaintiff was asked for a zip code when, under the law, plaintiff should not have been). Here, Plaintiff only hypothesizes that American must disclose the economic nature of business relationships with third-parties. Plaintiff certainly has not pointed to any such regulatory or statutory requirement.[2]

Because Plaintiff has not alleged facts showing a concrete and particularized injury in fact traceable to American's conduct, the Complaint must be dismissed.

### B. The Airline Deregulation Act Preempts Plaintiff's State-Law Claims.

Both of the state-law claims alleged by Plaintiff must be dismissed because they are expressly preempted by the Airline Deregulation Act, 49 U.S.C. § 41713.

---

[2] Nor can Plaintiff pursue a claim for some hypothetical cost of trip insurance that he might have paid but for American's purported conduct. *Finkelman v. Nat'l Football League*, 810 F.3d 187, 200 (3d Cir. 2016) (court has "no way of knowing whether" defendant's conduct "had the effect of increasing or decreasing prices" and thus plaintiff failed to establish cognizable injury-in-fact); *see also Dominguez v. UAL Corp.*, 666 F.3d 1359, 1362–65 (D.C. Circ. 2012) (putative class representative lacked standing to challenge airline's policy prohibiting ticket resale because plaintiff could merely hypothesize that secondary market would create a lower price).

### *1.      Preemption under the Airline Deregulation Act*

Before Congress enacted the ADA, the interstate airline industry was closely regulated by the Civil Aeronautics Board, which controlled, among other things, the rates, routes, and services of air carriers. *See Nw. v. Ginsberg*, 134 S. Ct. 1422, 1428 (2014); *W. Air Lines, Inc. v. CAB*, 347 U.S. 67, 74 (1954); Fed. Aviation Act of 1958, 72 Stat. 731 (1958). At the same time, airlines faced attempts by States to impose their own regulations as well. *Ginsberg*, 134 S. Ct. at 1428; *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992).

In 1978, Congress enacted the ADA to remove the direct federal regulation of airlines and to "promote 'efficiency, innovation, and low prices' in the industry through 'maximum reliance on competitive market forces and on actual and potential competition.'" *Ginsberg*, 134 S. Ct. at 1428 (quoting 49 U.S.C. §§ 40401(a)(6), (12)(A)). Not only did the ADA change the scope of federal regulation, it expressly preempted any State "law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1).

The scope of the ADA's express preemption is purposefully broad because Congress intended "to ensure that the States would not undo federal deregulation with regulation of their own." *Morales*, 504 U.S. at 378; *see also Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1257 (11th Cir. 2003) (explaining that "the ADA's preemption clause is properly afforded an extremely broad scope"). For this reason, state-law claims "do not have to actually prescribe rates, routes, or services, or be specifically addressed to the airline industry, or be inconsistent with federal law" to be preempted. *Tucker v. Hamilton Sundstrand Corp., Inc.*, 268 F. Supp. 2d 1360, 1363 (S.D. Fla. 2003). Rather, the ADA will preempt any claim that (1) "relates to" the

prices, routes, or services of an air carrier, and (2) constitutes an enactment or enforcement of state law. *Id.*[3]

### *2. The ADA preempts Plaintiff's FDUTPA claim.*

In Count I, Plaintiff alleges violations of Florida Deceptive and Unfair Trade Practices Act. Plaintiff's own allegations—that American failed to disclose that portions of the price paid by a customer to a third-party for trip insurance may be remitted back to American, *see* Compl. at ¶¶ 37, ECF No. 1—plainly establish that this claim relates to both prices and services of an air carrier. Therefore, the claim is preempted. While, according to Plaintiff, this failure to disclose this "pass through" fee amounts to an unfair and deceptive practice under Florida law, *see, e.g.*, *id.* at ¶¶ 1, 37–38, 65–67, this claim simply cannot survive the ADA for several reasons.

*First*, the Department of Transportation (the agency responsible for economic regulation of air carriers) has unquestionably treated travel insurance as an ancillary service of airlines and has specified that customers must affirmatively opt in if they wish to purchase it. 76 Fed. Reg. 23110-01, at 23144 (Apr. 25, 2011). In discussing the adoption of a rule, it stated:

> This rule would prohibit opt-out provisions for any ancillary fee for an **optional service** such as seat selection, seat upgrades, pre-boarding, **travel insurance**, rental cars, and transfers to and from the airport.

*Id.* (emphasis added).[4]

---

[3] Importantly, ADA preemption also occurs even if the state law does not directly regulate an air carrier but instead regulates third-parties who affect a price, route, or service (like Allianz here). *ABC Charters, Inc. v. Bronson*, 591 F. Supp. 2d 1272, 1300 (S.D. Fla. 2008) ("Regulation of other individuals or entities, if such regulation will have an effect on price, route or service of a direct or indirect air carrier, is preempted.") (citing *Huntleigh Corp. v. La. State Bd. of Private Sec. Examiners*, 906 F. Supp. 357, 362 (M.D. La. 1995)). Thus, any attempt by Plaintiff to make American "responsible" for conduct by Allianz is also preempted.

[4] Consistent with the DOT rule, travel insurance through Allianz is offered only on an opt-in basis. *See* Compl. at ¶ 2.

Courts have similarly construed the term "services" to include ancillary items offered by an airline. *See, e.g.*, *David v. United Cont'l Holdings, Inc.*, No. 15-cv-01986SDWLDW, 2015 WL 7573205, at * 3–4 (D.N.J. Nov. 24, 2015) (finding inflight television and Wi-Fi to be "services" under the ADA because they are part of the factors that go into the provision of the quid pro quo between the airline and passenger); *Restivo v. Cont'l Airlines, Inc.*, 947 N.E.2d 1287, 1290–91 (Ohio Ct. App. 2011) (finding application of state law purporting to affect expiration dates of airline gift cards related to airline services and was preempted). Because Plaintiff's FDUTPA claim over trip insurance charges relates to services offered by American, it is preempted.

*Second*, courts have routinely held that claims under consumer protection laws such as FDUTPA are preempted precisely because such claims relate to airline prices or services. *See, e.g.*, *Morales*, 504 U.S. at 391; *Bronson*, 591 F. Supp. 2d at 1301 ("Indeed, courts routinely hold that state consumer protection and deceptive practices[] laws and regulations are expressly preempted by [the ADA]."); *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995) (Illinois' Consumer Fraud and Deceptive Business Practices Act preempted by ADA); *Trujillo v. Am. Airlines, Inc.*, 938 F. Supp. 392, 394 (N.D. Tex. 1995) (claims under Texas Deceptive Trade Practices Act preempted by ADA); *David*, 2015 WL 7573204 at * 3–4 (claims under New Jersey Consumer Fraud Act are preempted by the ADA); *Flaster/Greenberg P.C. v. Brendan Airways, LLC*, No. 08-cv-4333, 2009 WL 1652156 at *6–7 (D.N.J. June 10, 2009) (finding the ADA leaves no "room for a consumer fraud claim against an airline" and dismissing such claim with prejudice). Thus, even if there were a state law requiring disclosure by an airline of its economic relationship with third parties for services offered by an airline, which is how Plaintiff improperly seeks to use FDUTPA in this case, any such claim is preempted under the ADA.

Indeed, that is exactly what the Supreme Court held in *Morales*. There, several state attorneys general adopted "Air Travel Industry Enforcement Guidelines" specifying how they would enforce their states' consumer protection laws with respect to airlines. 504 U.S. at 379. The "guidelines" addressed, among other things, the manner in which airlines were required to display and disclose information about airline prices—including any surcharges. *See id.* at 379, 405.[5] As the Court explained, "One cannot avoid the conclusion that these aspects of the guidelines [including the provision addressing surcharges] 'relate to' airline rates." *Id.* at 388. Having found these guidelines to relate to price, the Court held that they were preempted by the ADA. *Id.* at 391.

Like the "guidelines" in *Morales*, Plaintiff here seeks to use the FDUTPA state-law claim as an attempt to regulate *how* American displays prices for ancillary travel services. According to Plaintiff, Florida's consumer protection statute requires American to disclose whether it receives remuneration for trip insurance purchased through a separate entity. Setting aside that FDUTPA imposes no such obligation, it is irrefutable that trip insurance and information about how it is charged (whether offered through the airline or not) is related to both prices and services offered by an airline, and is therefore cannot be subject to any state regulation. The ADA prohibits such attempts under state law to dictate the manner in which an airline displays pricing or offers services.

        3.    *The ADA also preempts Plaintiff's unjust enrichment claim.*

Plaintiff's unjust enrichment claim fares no better. The unjust enrichment claim depends on the same essential facts as Plaintiff's FDUTPA claim and therefore also relates to the prices and services of an air carrier. "It is well settled that claims against airlines for unjust enrichment

---

[5] The Supreme Court included the full text of the guidelines as an appendix to its opinion. *See Morales*, 504 U.S. at 391–419.

fall within the ADA's preemption clause." *Gordon v. United Cont'l Holding, Inc.*, 73 F. Supp. 3d 472, 480 (D.N.J. 2014); *see also Blackner v. Cont'l Airlines, Inc.*, 709 A.2d 258, 260 (N.J. App. Div. 1998) (plaintiff's unjust enrichment claim was preempted by ADA because it requested an "enlargement or enhancement of her rights based on state laws or policies"); *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 38 (1st Cir. 2007) (state law unjust enrichment claim is preempted).

Because both of his state-law claims are preempted, Plaintiff's complaint fails as a matter of law and must be dismissed with prejudice.[6]

## II.    Plaintiff's FDUTPA Count Fails to State a Claim.

Assuming the Court reaches the substance of the FDUTPA claim notwithstanding Plaintiff's lack of standing and ADA preemption, Plaintiff has not pled facts sufficient to show he is entitled to relief and this claim must be dismissed for this additional reason.

Plaintiff seeks both damages and injunctive and declaratory relief for American's purported nondisclosure of some unspecified amount it allegedly receives from Allianz. To state a claim for relief under FDUTPA, "Plaintiff must allege that Defendants engaged in a deceptive act or practice in trade <u>and</u> that Plaintiff is a person 'aggrieved' by the deceptive act or practice." *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1348–49 (S.D. Fla. 2009) (emphasis added, citing § 501.211, Fla. Stat.). "[D]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)).

---

[6] A finding of preemption does not mean Mr. Zamber is without recourse. His remedies lie under 49 U.S.C. § 41712(a), which authorizes the DOT to investigate claims of unfair and deceptive trade practices against an airline. Moreover, the ADA generally does not preempt claims seeking to enforce the privately ordered obligations in the contract between the parties. Mr. Zamber has not alleged that there was any breach of any contract.

Plaintiff's FDUTPA claim fails, however, for the simple reason that there is nothing wrong with American's "omission" because it does not have an affirmative duty to disclose to its customers whether it receives money for each trip insurance policy purchased from Allianz. Plaintiff has entirely failed to point to any statutory or regulatory requirements violated by American concerning trip insurance disclosures. The failure to allege a basis for imposing a duty to disclose on American is fatal to Plaintiff's claim because American's conduct cannot be deceptive as a matter of law. *See Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1338 (11th Cir. 2012) (dismissing plaintiff's FDUTPA claim where plaintiff alleged that defendants breached "an affirmative duty of disclosure" by knowingly omitting certain information because "the alleged duty of disclosure did not exist under Florida law"); *see also Behrman v. Allstate Ins. Co.*, 388 F. Supp. 2d 1346, 1351 (S.D. Fla. 2005) ("Under Florida law, omissions are not actionable as fraudulent misrepresentations unless the party omitting the information owes a duty of disclosure to the party receiving the information"); *Friedman v. Am. Guardian Warranty Servs., Inc.*, 837 So. 2d 1165, 1166 (Fla. 4th DCA 2003) ("Fraud based upon a failure to disclose material information exists only when a duty to make such disclosure exists.").

Plaintiff's allegation that American conceals "its financial motivation in pushing the product by formally disclaiming any role in the trip insurance policies being sold on its website" and representing "that a third party is providing the insurance, not American itself," falls far short of being within the realm of "possibly" being unfair or deceptive. *See* Compl. at ¶¶ 28–29. The standard for deception "requires a showing of 'probable, not possible, deception' that is 'likely to cause injury to a reasonable relying consumer.'" *Friedman*, 837 So. 2d at 1166 (quoting *Millennium Commc'ns & Fulfillment, Inc. v. Office of the Att'y Gen.*, 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000)). Plaintiff certainly has not asserted that any of the information

displayed on American's website is deceptive or inaccurate. At best, Plaintiff describes a wholly non-remarkable and commonplace affiliate marketing relationship between American and Allianz whereby a consumer is given the option of purchasing a service from a third party. Because Plaintiff can just as easily decline to purchase trip insurance after evaluating its benefits, there is no reasonable possibility that Plaintiff could have been misled since each consumer makes an independent decision whether to purchase trip insurance. Thus, Plaintiff—like every other consumer purchasing trip insurance—received the desired coverage and agreed to pay the required premium. Where there is no possibility that a reasonable consumer could be misled, a claim under FDUTPA must be dismissed. *See Casey v. Fla. Coastal Sch. of Law, Inc.*, No. 3:14-CV-1229-J-39PDB, 2015 WL 10096084, at *15 (M.D. Fla. Aug. 11, 2015), *report and recommendation adopted*, No. 3:14-CV-01229, 2015 WL 10818746 (M.D. Fla. Sept. 29, 2015) (dismissing plaintiff's claim where plaintiff failed to allege facts that stated a plausible deceptive or unfair act or practice under FDUTPA relating to a law school's publication of salary data on its website); *Zlotnick*, 480 F.3d at 1287 (dismissing plaintiff's claim where the agreement upon which the action was based satisfied all relevant statutory requirements and did not contain terms which would mislead a purchaser); *cf. Steinberg v. Ateeco, Inc.*, No. 15-CIV-60973, 2015 WL 11181732, at *4 (S.D. Fla. 2015) (denying defendant's motion to dismiss FDUTPA claim where plaintiff alleged the precise mandatory FDA regulations with which defendant was noncompliant by its misrepresentation of nutritional information and failure to provide a disclosure statement).

Moreover, Plaintiff has not suffered "actual damages" as required under FDUPTA, which do not include consequential damages. *See* § 501.211(2), Fla. Stat.; *Kia Motors Am. Corp. v. Butler*, 985 So. 3d 1133, 1139 (Fla. 3d DCA 2008) (FDUTPA class claim failed both on causation and actual damages). Plaintiff Zamber has entirely failed to plead that he incurred any

"actual damages." This is fatal to his claim. *See, e.g.*, *Batson*, 746 F.3d at 834 (plaintiff suffered no actual injury under Illinois Consumer Fraud Act in that he received the benefit of his bargain); *H & J Paving of Fla., Inc. v. Nextel, Inc.*, 849 So. 2d 1099, 1101 (Fla. 3d DCA 2003) ("actual damages" are measured by the difference in market value of the product of service when delivered and its market value in the condition it should have been delivered).

Accordingly, Plaintiff's FDUTPA claim must be dismissed.

### III.     Plaintiff's Unjust Enrichment Count Similarly Fails.

In Count II of his complaint, Plaintiff seeks damages for unjust enrichment despite having plainly pled that he received the very benefit—trip insurance—for which he bargained. Simply, Plaintiff has not pled facts sufficient to show he is entitled to equitable relief, warranting dismissal of this claim.

To establish a claim for unjust enrichment, a plaintiff must plead and prove that "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 857 F. Supp. 2d 1294, 1306 (S.D. Fla. 2012) (citation omitted). Here, Plaintiff has not alleged that he made any payments to American for trip insurance. To the contrary, Plaintiff alleges that trip insurance policies are sold by Allianz—not American—and that Allianz pays American some form of "kickback." *See, e.g.*, Compl. at ¶¶ 21–22, 28–31, 35, 41, 72–73, ECF No. 1; *id*. at Exs. 4 & 5, ECF Nos. 1-4, 1-5. Thus, on the face of the complaint, it is apparent that Plaintiff has not conferred a benefit to American, Allianz has (if any such benefit were conferred at all). That is not enough. *See Merle*

*Wood*, 857 F. Supp. 2d at 1294; *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331 (Fla. 5th DCA 2007) (plaintiff "must show he <u>directly</u> conferred a benefit on the defendant[]" ).

Nor is there anything inequitable about American retaining monies paid to it by Allianz. "Logically, the circumstances necessary to establish the [fourth] element must demonstrate that the plaintiff was harmed in some way before courts will impose this equitable remedy." *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1334–35 (S.D. Fla. 2007) (citing *Green v. McNeil Nutritionals, LLC*, No. 2004-0379-CA, 2005 WL 3388158, at *6 (Fla. 4th Cir. Ct. Nov. 16, 2005)). Thus, to state a claim for unjust enrichment in these circumstances, the plaintiff must plead, at a minimum, that he did not get the "benefit of his bargain" when he purchased a trip insurance policy. *See id.*

Plaintiff has made no such allegations here. Plaintiff claims he purchased a trip insurance policy from Allianz after booking an American Airlines' flight. *See* Compl at ¶¶ 40, 72. Following his purchase, he received a confirmation from Allianz, attaching his policy. *See id.* Plaintiff paid a total of $24 for his trip insurance policy and in return received numerous benefits including, but not limited to, baggage delay coverage, travel/trip delay coverage, and trip cancellation protection. *Id.* at Ex. 5, ECF No. 1-5. According to his own allegations, Plaintiff received precisely what he bargained for. The complaint does not contain a single allegation that Plaintiff obtained any less than the very benefits he expected and purchased under the trip insurance policy sold and issued by Allianz. "Unjust enrichment 'cannot exist where payment has been made for the benefit conferred.'" *N.G.L. Travel Assocs. v. Celebrity Cruises, Inc.*, 764 So. 2d 672, 675 (Fla. 3d DCA 2000) (quoting *Gene B. Glick Co. v. Sunshine Ready Concrete Co.*, 651 So. 2d 190, 190 (Fla. 4th DCA 1995)). Plaintiff's attempt to color the simplicity of the transaction with condemnatory allegations that American "enrich[ed] itself to the detriment of

the Class" or "appreciated, accepted and retained this benefit" is unavailing because Plaintiff has not and cannot articulate an actual ascertainable loss that he suffered.

Accordingly, Plaintiff's claim for unjust enrichment must be dismissed.

## CONCLUSION

Because Plaintiff does not have standing, the Court must dismiss for lack of subject-matter jurisdiction. Regardless, Plaintiff's claims are preempted by the Airline Deregulation Act and thus must be dismissed with prejudice. Notwithstanding his lack of standing and ADA preemption, Plaintiff failed to set forth plausible grounds for any of his claims and the Complaint must be dismissed for this additional reason.

Dated:  November 7, 2016

Respectfully submitted,

**SHOOK, HARDY & BACON L.L.P.**
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305.358.5171
Facsimile: 305.358.7470


By: /s/ Humberto H. Ocariz
Humberto H. Ocariz
hocariz@shb.com
Florida Bar No.: 740860
Michael A. Holt
mholt@shb.com
Florida Bar No.: 91156

*Attorneys for American Airlines, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of November, 2016, a true and correct copy of the foregoing was filed using the Court's CM/ECF system and was served on all counsel or parties of record on the attached Service List by the method indicated.

By: /s/ Michael A. Holt
     MICHAEL A. HOLT

## SERVICE LIST

| | |
|---|---|
| Scott B. Cosgrove, Esq. | Humberto H. Ocariz, Esq. |
| scosgrove@leoncosgrove.com | hocariz@shb.com |
| Alec H. Schultz, Esq. | Michael A. Holt, Esq. |
| aschultz@leoncosgrove.com | mholt@shb.com |
| Jeremy Kahn, Esq. | **SHOOK, HARDY & BACON L.L.P.** |
| jkahn@leoncosgrove.com | Miami Center, Suite 3200 |
| LEON COSGROVE LLC | 201 South Biscayne Boulevard |
| 255 Alhambra Circle, Suite 800 | Miami, Florida 33131 |
| Coral Gables, Florida 33134 | Telephone: 305.358.5171 |
| Telephone: 305.740.1975 | Facsimile: 305.358.7470 |
| Facsimile: 305.437.8158 | |
| | (Service via CM/ECF) |
| (Service via CM/ECF) | |
| | *Counsel for American Airlines, Inc.* |
| *Counsel for Plaintiff* | |