UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:  16-23901-CIV-MARTINEZ/GOODMAN

KRISTIAN ZAMBER,

     Plaintiff,

v.

AMERICAN AIRLINES, INC.,

     Defendant.

_____/

**REPORT AND RECOMMENDATIONS ON**
**DEFENDANT'S MOTION TO DISMISS**

This purported class action case concerns the language which appears on an airline's website when a customer purchases optional travel insurance (a/k/a trip insurance). It also concerns the reasonable inferences which a customer could or would make and how a customer would interpret the information provided. Although the website does not *exactly* say what Plaintiff Kristian Zamber ("Plaintiff" or "Zamber") claims it says, it does make enough representations to meet the minimum Florida state law standard for alleged deception and unjust enrichment claims (when analyzed through the prism of a permissible and rationale **interpretation** of these representations).

1

Plaintiff might not ultimately be able to certify a class, and he might not later survive a summary judgment motion either. But for now, for purposes of a threshold motion to dismiss, Plaintiff's Complaint survives, and the Undersigned therefore **respectfully recommends** that United States District Judge Jose E. Martinez **deny** the dismissal motion.

Nevertheless, the Undersigned feels compelled to note that the issue is a close one. In addition, as outlined below, some of the allegations appear to overstate or incorrectly state what language is actually on the website. Plaintiff may therefore wish to clean up the problematic allegations in a newer version of the Complaint.

Moreover, Plaintiff may need to confront again the threshold issue of whether the Airline Deregulation Act ("ADA") forecloses (or preempts) the claims here. Neither party has called my attention to an on-point authority addressing the critical issue of whether travel insurance is encompassed by the ADA's prohibition -- i.e., whether travel insurance is "related to a price, route or service of an air carrier that may provide air transportation." 49 U.S.C. § 41713(b)(1).

Because this issue appears to be one of first impression, the Undersigned recommends that the Court postpone ruling on this issue until discovery generates additional facts necessary to better inform the analysis of the ADA preemption issue.

In an effort to highlight some of the points which affect the analysis of the two counts here, the Undersigned will outline later in this Report the allegations which

Plaintiff did *not* make in his Complaint (and the representations which Plaintiff *did* make, but in an arguably inconsistent or problematic way). I will also note the allegations which Defendant American Airlines, Inc. ("American") did not expressly make either (in its website or ticket/travel insurance confirmation). Plaintiff's omissions or inaccurate summaries of what American represented may ultimately be just as important as the representations and allegations which were in fact expressly made.

By way of overall procedural background, American filed a Motion to Dismiss [ECF No. 13], which is ripe for a ruling. Judge Martinez referred the motion to the Undersigned, [ECF No. 39], and I held a hearing on March 7, 2017.

**Factual and Procedural Background**

Because this Report concerns a motion to dismiss, the Undersigned must treat the allegations as true. But I will flag those allegations that are inconsistent with the actual facts (i.e., at odds with the specific and actual representations made by American).

The Complaint alleges the following scenario:

Plaintiff bought a travel insurance policy on American's website. On its website, American represents that, despite being sold via American's website, the travel insurance is "sold by third-party insurance providers, **not American**." [ECF No. 1, ¶ 33]. (emphasis added). Plaintiff contends that this representation necessarily informs a reasonable consumer that the insurance premium is a "pass through" fee paid to the

third-party insurer. But, according to Plaintiff, "in reality, [American] receives an **undisclosed kickback** from every policy sold." [ECF No. 1, ¶ 1] (emphasis supplied).

When a customer buys an airline ticket on American's website, American requires the customer to elect whether to purchase a trip insurance policy from an independent insurer, Allianz Global Assistance ("Allianz"). [ECF No. 1, ¶¶ 2, 8]. The customer must check either a "yes" or "no" box before American allows the customer to complete the ticket purchase. [ECF No. 1, ¶ 5]. The "yes" option is highlighted in bold type, next to which is a checkmark in bright green typeface, followed immediately by the word "Recommended," which is also in bright green typeface. [ECF No. 1, ¶ 5].

Following the bright green checkmark and "Recommended" line, American includes a quote from U.S. News & World Report that states: "It's a smart idea to consider investing in travel insurance." [ECF No. 1, ¶ 6]. The "no" option is below the "yes" option and not in bold type. [ECF No. 1, ¶ 5]. A customer is unable to proceed with buying a ticket until electing whether to buy trip insurance. [ECF No. 1, ¶ 4].

On the same website, American makes the following representations:

- "This insurance is offered by a third party, Allianz Global Assistance, not American Airlines."

- "Recommended by AGA Service Company, the licensed producer and administrator of this plan."

- "Trip insurance products are sold by third-party insurance providers, not American, so you'll receive a separate confirmation."[1]

- "When you purchase a plan from Allianz Global Assistance . . . ."

[ECF Nos. 1, ¶¶ 8, 29, 33; 1-1; 1-2; 1-3].

Further, when a customer buys trip insurance (a/k/a travel insurance) on American's website, the premium is not itemized on the airfare bill. Rather, it is itemized separately even though paid via a one-time credit card charge on American's website. [ECF No. 1, ¶ 31]. This contrasts with the election of other "add-ons," like seat selection, which are included as part of the listed fare price. [ECF No. 1, ¶ 31].

Plaintiff contends that these representations inform a reasonable consumer that the premiums paid for a trip insurance policy on American's website are a "pass through" charge, meaning that American does not have a profit interest in a customer's purchase of an insurance policy and that American simply collects the policy premium and forwards it on to the actual insurer. [ECF No. 1, ¶¶ 34, 36]. Plaintiff alleges that, despite these representations, American in fact receives a portion of the premium the customer pays for the travel insurance policy, thus making the sale of travel insurance policies a "hidden profit center" for American. [ECF No. 1, ¶ 37]. Plaintiff contends that the portion of the travel insurance premium received by American is "an undisclosed kickback" on "every policy sold." [ECF No. 1, ¶ 1].

---

[1]     This is on the Frequently Asked Questions page of American's website in response to the question: "Why isn't my trip insurance purchase displayed in my itinerary?" [ECF No. 1-3, p. 11].

On March 20, 2016, Plaintiff bought a trip insurance policy on American's website. [ECF No. 1, ¶ 40]. On September 12, 2016, based on the above-discussed "kickback" scheme, Plaintiff filed a two-count class action against American for violation of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), Florida Statute § 501.201 *et seq.*, and unjust enrichment. American moved to dismiss based on: (1) lack of standing; (2) failure to state a claim; and (3) preemption.

<u>What is not alleged (or what is inconsistently or incorrectly alleged)</u>

In the Complaint, Plaintiff alleges that "American **affirmatively** leads the consumer to believe that it has **no profit participation** in the sale of this insurance by, among other things, **expressly disclaiming any role** in the actual provision of the insurance that its customers purchase." [ECF No. 1, ¶ 7] (emphasis supplied).

But neither American's website nor the confirmation page affirmatively represents that American has no profit participation. Likewise, American's website does not *expressly* disclaim anything about its role (or lack of a role) in the trip insurance. The only material representation it makes is that the insurance is provided by (and sold by) Allianz, a third party, not American.

Plaintiff also alleges that "American **denies** that it is **involved in** the insurance, and even denies that it is the party that is offering the insurance to the consumer." [ECF No. 1, ¶ 8] (emphasis supplied).

But American makes no such denial in its website or on the travel insurance confirmation page. It does represent that Allianz, not American, provides the insurance, but that is significantly different than denying all involvement in the insurance. Moreover, assuming that a representation that Allianz, not American, provides the insurance, what, if anything, is false or deceptive about *that?*

Plaintiff has not alleged that Allianz does not provide the insurance. At the hearing, Plaintiff's counsel argued[2] that **American** does in fact also provide the insurance because it is acting as an agent or broker for American.  But that argument is not alleged in the Complaint. The Undersigned will not consider attorney rhetoric not also included as an actual allegation in the Complaint when evaluating the Complaint's sufficiency.

Plaintiff alleges that the "lack of inclusion of the trip insurance cost in the customer's airfare purchase further represents to the consumer that American treats the insurance cost as a 'pass through' charge, not as a profit vehicle for itself." [ECF No. 1, ¶ 31]. But neither the website nor the ticket confirmation uses the term "pass through" and Plaintiff's counsel admitted at the hearing that the pass through theory is the

---

[2]     Plaintiff's counsel argued that "it's highly suggestive that they are the broker in the sale." [ECF No. 61, p. 49]. He conceded that Plaintiff did not "use the word 'broker,' but argued that it is "what we are suggesting." But he acknowledged that the term broker or *de facto* broker appears nowhere in the Complaint. [ECF No. 61, p. 50].

*impression* left with the consumer. Despite the allegations in the Complaint, American does not expressly represent that travel insurance is a pass through charge.

In the Complaint, Plaintiff alleges that American "represents the cost of the trip insurance policies as a 'pass through' charge, where **<u>Defendant</u> simply collects the money** for the insurance policy from the consumer and **forwards it on** to the actual insurance provider." [ECF No. 1, ¶ 36] (emphasis added). As noted, American does not affirmatively represent the trip insurance cost as a pass through charge.

But there is an additional issue arising from paragraph 36 of the Complaint. At the hearing, Plaintiff's counsel said he was not sure whether the funds go directly to Allianz or whether they first go to American or to another entity. He explained that discovery would reveal how the money traveled and further argued that the path the money takes does not matter. This lack of certainty is inconsistent with the Complaint, which unequivocally alleges that there is no suggestion that American "**is** retaining a portion of this charge for itself." [ECF No. 1, ¶ 38] (emphasis added). Moreover, the Complaint contends that American itself collects the money and forwards it to Allianz.

In addition, the Complaint alleges that certain statements "reinforce the **representation** of the trip insurance as a 'pass through' charge, one where American has no role in the provision of the product nor any profit interest." [ECF No. 1, ¶ 34] (emphasis supplied). But, as highlighted earlier, American does not actually and

affirmatively represent the trip insurance to be a "pass through," nor does it expressly represent that it has "no role" or no "profit interest."

So these may be inferences or interpretations which a reasonable consumer might reach, but they are not express "representations."

Zamber's Complaint does not allege that he ever made a claim under his policy or that any claim filed by him was not paid by Allianz. Nor does it allege that the policy issued to him was different in any respect from the policy he contracted with Allianz to purchase. In addition, the Complaint does not allege that Zamber was charged an amount different than the amount he agreed to pay. And it does not allege that the travel insurance coverage he purchased was worth less than he paid.

In addition, the Complaint does not allege that Zamber could have procured travel insurance of comparable value at a lower price, nor does it allege that Zamber would not have paid the premium anyway had he known that some portion of it was going to American for additional profit. And he does not allege that the insurance would have been offered for a lower price but for American's purported action of arranging to keep some portion of the premium as additional profit.

On the other hand, American has not alleged, in its opposition memorandum or at the hearing, that it has absolutely no financial stake in the travel insurance provided by Allianz. It asserts other arguments and theories, of course, but that is not one of them.

**Applicable Legal Principles and Analysis**

*Standing*

As required, the Undersigned first addresses standing, which both parties agree is a threshold issue which must be resolved before any other argument. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (rejecting practice of courts assuming "hypothetical jurisdiction" and holding that the "requirement that jurisdiction be established as a threshold matter . . . is 'inflexible and without exception'"); *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) ("In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims."); *Gagliardi v. City of Boca Raton*, 197 F. Supp. 3d 1359, 2016 U.S. Dist. LEXIS 184478, at *11–12 (S.D. Fla. 2016) ("Questions regarding standing implicate a court's subject-matter jurisdiction and 'must be addressed prior to and independent of the merits of a party's claims.'") (quoting *DiMaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1301 (11th Cir. 2008)).

To have standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations omitted).

An injury in fact is "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (citation omitted).

Plaintiff pleads an injury in fact because he seeks recovery of the portion of his premium that American kept despite making representations about the trip insurance premium that a consumer could reasonably interpret as a "pass through" charge, to which he is entitled under Florida law. *Deere Constr., LLC v. Cemex Constr. Materials Fla., LLC,* 198 F. Supp. 3d 1332, 1340 (S.D. Fla. 2016) ("Plaintiff clearly alleges an injury in fact: the payment of fees it seeks to recover with its prayer for the repayment of the fees plus interest."); *Morgan v. Pub. Storage*, No. 14-cv-21559, 2015 WL 11233111, at *2 (S.D. Fla. Aug. 17, 2015) (rejecting standing challenge where "measure of actual damages . . . is the amount retained by defendant despite the representation that the amount will be transferred to a third-party"); *Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699, 703 (Fla. 3d DCA 2000) ("[D]amages are sufficiently shown by the fact that the passenger parted with money for what should have been a 'pass-through' port charge, but the cruise line kept the money.").[3]

Plaintiff's allegations sufficiently demonstrate that his injury is fairly traceable to American's challenged conduct. This is a "relatively modest" burden, *Bennett v. Spear*,

---

[3]       At the hearing, American conceded: "If you find that *Latman* applies . . . then you are in the realm of necessarily finding that standing exists[.]" [ECF No. 61, p. 112]. As discussed *infra*, Plaintiff's FDUTPA claim is analogous to the claim in *Latman*.

520 U.S. 154, 171 (1997), and "even harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003); *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1391 n. 6 (2014) ("Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct.").

Here, Plaintiff's injury is fairly traceable to American's conduct because it is a reasonable inference that Plaintiff would not have been damaged but for American's representations about the trip insurance, which a reasonable consumer could *interpret* as a "pass through" charge. *Latman*, 758 So. 2d at 703 ("we think the inquiry is how a reasonable consumer would interpret the term 'port charges'" and concluding that the "term necessarily constitutes a representation that these are 'pass-through' charges which the cruise line will pay to the relevant port authorities (and possibly others)."

Finally, "a favorable decision on the claim will redress the injury to the extent Plaintiff recovers the monies it paid on the basis of deceptive representations and omissions." *Deere Constr.*, 198 F. Supp. 3d at 1340.

Thus, Plaintiff has standing. This conclusion, of course, is based only on the allegations. If it turns out that the critical allegations and the fundamental theory are incorrect, then Plaintiff may not actually have standing (or he may be on the losing side of a summary judgment motion).

*FDUTPA*

The Undersigned next turns to whether Plaintiff states a FDUTPA claim. A FDUTPA claim requires "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016) (citations omitted). "To satisfy the first element, the plaintiff must show that 'the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances.'" *Id.* at 983–84 (citations omitted).

Because "an objective test is employed in determining whether the practice was likely to deceive a consumer acting reasonably," a plaintiff "need not show actual reliance on the representation or omission at issue." *Id.* at 984.[4] "In determining whether a representation is likely to mislead consumers acting reasonably, courts consider the <u>net impression</u> created." *FTC v. RCA Credit Servs., LLC*, 727 F. Supp. 2d 1320, 1329 (M.D. Fla. 2010) (emphasis supplied). If the statements are "likely to mislead reasonable consumers," then it makes no difference if the statements are "technically or literally

---

[4]   Zamber's burden here is unlike (and less than) the burden a claimant pursuing a fraud claim must meet. Under Florida law, a plaintiff must establish the following elements to prove a fraud allegation: "(1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3) the intent by the person making the statement that the representation will induce another to act on it; and (4) **reliance** on the representation to the injury of the other party." *Nyesa Costa Rica v. Wilson Capital Grp. Holdings, LLC*, No. 11-22036, 2012 WL 1492344, at *3 (S.D. Fla. Apr. 27, 2012) (emphasis supplied) (quoting *Lance v. Wade*, 457 So. 2d 1008, 1011 (Fla. 1984)).

true." *FTC v. Peoples Credit First, LLC*, 244 F. App'x 942, 944 (11th Cir. 2007).[5] The

determination of how a reasonable consumer would interpret a term is an issue of fact.

*Jankus v. Edge Inv'rs, L.P.*, 650 F. Supp. 2d 1248, 1258 (S.D. Fla. 2009).

The Undersigned finds that *Latman* applies.[6] In *Latman*, the Third District Court

of Appeal held that cruise lines engaged in a "deceptive" practice under FDUTPA when

they itemized a portion of passengers' ticket fares as "port charges" even though the

cruise lines paid only a portion of the charges to third parties and kept the remainder as

profit. 758 So. 2d at 701, 703 ("We therefore conclude that where the cruise line bills the

passenger for port charges but keeps part of the money for itself, that is a deceptive

practice under FDUTPA.").

**Even though the term "pass through" was not expressly included in the cruise**

**lines' representations to the passengers**, the *Latman* Court held that "the inquiry is how

a reasonable consumer would interpret the term 'port charges,'" and the term

"necessarily constitutes a representation to a reasonable consumer that these are 'pass-

through' charges which the cruise line will pay to the relevant port authorities (and

---

[5]    Under FDUTPA "Florida courts must give 'due consideration and great weight'" to
FTC cases. *Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 692 (S.D. Fla. 2017).

[6]    Because there is no authoritative decision from the Florida Supreme Court, *Latman*
is binding. *Fid. Union Trust Co. v. Field*, 311 U.S. 169, 177–78 (1940); *Veale v. Citibank,
F.S.B.*, 85 F.3d 577, 580 (11th Cir. 1996). Three judges in this district relied on *Latman*
when denying dispositive motion claims analogous to Plaintiff's. *Deere Constr.*, 198 F.
Supp. 3d at 1338-40 (Altonaga, J.); *Morgan*, 2015 WL 11233111, at *1 (Ungaro, J.); *Jankus*,
650 F. Supp. 2d at 1258 (Hurley, J.) (on summary judgment).

possibly others)." *Id.* at 704. Indeed, the Court held that any "intentional overcharge" that a reasonable consumer would interpret as going to a third party rather than kept by the defendant itself -- even one that the consumers were willing to pay -- would be actionable under FDUTPA. *Id.* at 703.

A FDUTPA plaintiff is not required "to identify any statements or representations by Defendants as to how the fees would be calculated in order to state a claim of deception or falsity;" American "chose the descriptive terms and if [it] do[es] not accurately describe what is being charged and collected, such conduct is actionable under the FDUTPA." *Deere Constr.*, 198 F. Supp. 3d at 1339.

Here, Plaintiff has sufficiently alleged for sufficiency-of-the-pleadings purposes that a consumer acting reasonably in the same circumstances would interpret American's representations that (i) a third-party, and "not American," sold the travel insurance policies and (ii) that travel insurance policies were purchased from such a third party to mean that American did not receive a portion of the premiums paid.[7]

---

[7]   American argues that the "pass through" cases are inapplicable because the payments are structured in a way that they are paid to the insurer and then a portion is paid by the insurer to American, as opposed to the funds being forwarded directly from American to the insurer with American retaining a portion. This argument is unpersuasive (at least at the motion-to-dismiss stage) for three reasons.

First, it goes beyond the four corners of the Complaint. [ECF No. 1, ¶ 36] ("Defendant simply collects the money for the insurance policy from the consumer and forwards it on to the actual insurance provider."). Second, the fact that the premium is paid via American's website is sufficient for the charge to be interpreted as a "pass through." Third, the Undersigned is not now convinced about American's view of this

This permissible interpretation is reinforced by the fact that the policy premium is allegedly not included in the customer's bill for the purchased airfare, but rather is listed separately. Indeed, this representation is arguably more explicit than a simple, vague reference to "port charges" (which was technically true because at least some of the charge went to the port in *Latman*, yet still was found deceptive).

Whether a reasonable consumer would interpret American's representations to mean that the trip insurance premium is a "pass through" charge is thus a question of fact for a jury. *Jankus*, 650 F. Supp. 2d at 1258 (finding "an issue of material fact as to whether a reasonable consumer would interpret this language to mean that at least a portion of the 'development fee' represented a 'pass through' charge").

Plaintiff adequately states a deceptive representation sufficient to satisfy the first element of a FDUTPA claim.[8]

---

approach. The gravamen of a "pass through" claim is that a charge is represented as being paid to a third party rather than ultimately being kept by the defendant. The fact that some of the travel insurance money supposedly ends up in American's pocket (rather than all of it winding up with a third party) is the significant allegation. *See Morgan*, 2015 WL 11233111, at *1 ("Plaintiffs can maintain a FDUTPA claim to recover the access fees <u>paid back</u> to Public Storage out of the PSTIP premiums based on Public Storage's alleged deceptive practice of representing that the PSTIP premium is transferred to a third-party, but is actually largely retained by Public Storage." (emphasis added)).

[8]     Even if Plaintiff had not adequately pled a deceptive representation, he would still alternatively state a claim based on a deceptive omission. FDUTPA applies to both representations and omissions. *Carriuolo*, 823 F.3d at 984 (stating that plaintiff "need not show actual reliance on the representation <u>or omission</u> at issue" (emphasis added)); *Turner Greenberg Assocs. v. Pathman*, 885 So. 2d 1004, 1006 n.1, 1009 (Fla. 4th DCA 2004)

Plaintiff also pleads causation and damages. Under FDUTPA, causation and damages are shown by the fact that Plaintiff parted with money for what should have been a "pass through" charge but that was instead kept by American. *Latman*, 758 So. 2d at 703 (damages where "passenger parted with money for what should have been a 'pass-through' port charge, but the cruise line kept the money"); *Morgan*, 2015 WL 11233111, at *2 ("amount retained by defendant despite the representation that the amount will be transferred to a third-party"); *Bowe v. Pub. Storage*, 106 F. Supp. 3d 1252, 1270 (S.D. Fla. 2015) ("[A]nalogous to the port charges in *Latman*, the full amount of the access fees would then be an appropriate measure of FDUTPA damages."); *Bowe v. Pub. Storage*, No. 14-cv-21559, 2014 WL 12029270, at *3 (S.D. Fla. July 2, 2014) (representation that fees were transmitted to third party but "instead of paying these fees to the insurance provider, Defendant retained a portion of these fees"); *Turner*, 885 So. 2d at 1008 ("[A]n appropriate measure of damages is the undisclosed profit[.]").

<u>Unjust Enrichment</u>

The Court next considers whether Plaintiff states an unjust enrichment claim. "There are three elements of an unjust enrichment claim under Florida law: first, the plaintiff has conferred a benefit on the defendant; second, the defendant voluntarily accepted and retained that benefit; and, finally, the circumstances are such that it would

_____

(affirming class certification expressly based on "failure to disclose" FDUTPA theory). A jury could find that the omission of American's alleged profit interest is deceptive here because American "recommends" that the customer purchase travel insurance and provides a list of "[t]op reasons to buy trip insurance." [ECF No. 1 ¶¶, 26, 32].

be inequitable for the defendants to retain the benefit without paying for it." *City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1287 (11th Cir. 2015).

Plaintiff alleges that he conferred a benefit on American because he paid money that ultimately was kept by American. It is immaterial whether American initially retained a portion of the funds Plaintiff paid for his policy and then sent the rest to the insurer or if all the funds went to an insurer and then a portion was "kicked back" to American. Under either scenario, money was transferred from Plaintiff's pocket and into American's. That is sufficient to confer a direct benefit.

Plaintiff also pleads the remaining elements. Plaintiff alleges that American voluntarily accepted and retained the alleged overcharge. Finally, the circumstances are such that it would be inequitable for American to retain the money because it obtained the money through alleged deceptive acts. As noted in *Latman*, and contrary to American's argument that Plaintiff received the benefit of his bargain, a "pass through" charge is deceptive even if the consumer is willing to pay the total price (with the overcharge) for the product or service. 758 So. 2d at 702–03.

*Preemption*

The Undersigned agrees with Plaintiff that, in an abundance of caution, an issue of first impression about ADA preemption should be deferred until the summary judgment stage, where the factual record can be more fully developed. Thus, the Undersigned recommends denying American's motion, but without prejudice to

American raising preemption on summary judgment (or at another, later time after the dismissal motion is resolved).

American contends that the ADA preempts Plaintiff's claims. The ADA preempts state laws that are "related to a price, route, or service of an air carrier that may provide air transportation." 49 U.S.C. § 41713(b)(1). A state law is "related to a price, route, or service of an air carrier" when it has "a connection with or reference to airline 'rates, routes, or services.'" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992).

The Eleventh Circuit has explained that that ADA does not "result in the pre-emption of 'virtually everything an airline does,'" but rather the ADA's preemptive effect is "limited to the bargained-for aspects of airline operations over which carriers compete." *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1258 (11th Cir. 2003) (emphasis omitted); *see also Amerijet Int'l, Inc. v. Miami-Dade Cty.*, 627 F. App'x 744, 749 (11th Cir. 2015) (holding that a "service" under the ADA "must fit within the limited range of services over which airlines compete" and must be provided as part of a "bargained-for exchange . . . between an air carrier and its consumers").

American does not cite any case holding that a claim related to a price or service marketed by an airline <u>but provided and sold by a third party</u> is preempted. Instead, every case that American relies on involves the purchase of a good or service provided and sold by an **air carrier** -- not a third party. *Am. Airlines v. Wolens*, 513 U.S. 219, 226

(1995) (frequent-flyer miles that were to be used as "credits for free tickets and upgrades" <u>from the airline</u>); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 391 (1992) (holding limited to "fare advertising provisions"); *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 31 (1st Cir. 2007) (airlines "unlawfully failing to refund various fees and taxes that had been collected as part of the original ticket prices"); *David v. United Cont'l Holdings, Inc.*, No. 15-cv-01926, 2015 U.S. Dist. LEXIS 159066, at *10–11 (D.N.J. Nov. 24, 2015) (in-flight DirecTV and Wi-Fi <u>provided and sold by the airline</u>); *Gordon v. U. Cont'l Holding, Inc.*, 73 F. Supp. 3d 472, 477–78 (D.N.J. 2014) (use of frequent-flyer miles to purchase hotel room <u>from the airline</u>); *Flaster/Greenberg P.C. v. Brendan Airways, LLC*, No. 08-4333, 2009 U.S. Dist. LEXIS 48653, at *13–17 (D.N.J. June 10, 2009) (alleged misrepresentations by airline about <u>its</u> ability to provide service); *Trujillo v. Am. Airlines*, 938 F. Supp. 392, 394 (N.D. Tex. 1995) (shipping services <u>provided by American</u>); *Restivo v. Cont'l Airlines, Inc.*, 947 N.E. 2d 1287, 1290 (Ohio Ct. App. 2011) (challenging expiration date of airline gift card that was "[o]nly valid for air travel purchases" and thus derived its value "from the intended purpose of securing food or services <u>from Continental</u>" (emphasis added)); *Blackner v. Cont'l Airlines, Inc.*, 709 A.2d 258, 260 (N.J. Super. Ct. App. Div. 1998) (surcharge to replace lost ticket).

Neither party cited a case directly on point as to whether ADA's preemption applies to travel insurance, nor has the Undersigned located such a case. It appears this

case presents an issue of first impression as to ADA preemption, not just in this circuit, but throughout the entire court system.

Several cases support the notion that, in the preemption context, the determination of issues of first impression is appropriately deferred until summary judgment where the factual record will be more fully developed. *Reinhardt v. Gemini Motor Transp.*, 869 F. Supp. 2d 1158, 1166 (E.D. Cal. 2012); *Chowdhury v. Nw. Airlines Corp.*, 238 F. Supp. 2d 1153, 1157 (N.D. Cal. 2002); *Woodson v. US Airways, Inc.*, 67 F. Supp. 2d 554, 557 (M.D.N.C. 1999).

Determining whether Plaintiff's claims have an impermissible effect on American's prices or services is an inherently factual question; evidence is required to determine whether and how Plaintiff's claim would have such an effect. Moreover, another undeveloped (and outside the four corners of the complaint) issue is whether travel insurance "fit[s] within the <u>limited range</u> of services over which airlines compete."*Amerijet Int'l, Inc.*, 627 F. App'x at 748–49 (emphasis added).[9] Thus, at this early stage, the Undersigned recommends denying American's motion without prejudice to American raising preemption on summary judgment (or at some later time after resolution of this dismissal motion).

---

[9]   Notably, both *Amerijet* (rejecting application of ADA preemption) and *Branche*, 342 F.3d at 1250 (vacating summary judgment entered for airline on preemption grounds in case where a terminated airline employee brought a state court action alleging retaliatory discharge in violation of Florida's Whistleblower Act) were decided at the summary judgment stage.

## Conclusion

The Undersigned **recommends** that the District Court **deny** (albeit without prejudice) American's motion to dismiss.

## Objections

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Jose E. Martinez. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on March 29, 2017.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
The Honorable Jose E. Martinez
All Counsel of Record