# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 1:16-CV-23901-MARTINEZ/GOODMAN

KRISTIAN ZAMBER, on behalf of
himself and all others similarly situated,

    Plaintiff,

vs.

AMERICAN AIRLINES, INC.,

    Defendant.

## AMERICAN AIRLINES, INC.'S REPLY IN SUPPORT OF RENEWED MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404

**INTRODUCTION**

Plaintiff's response to American's motion to transfer venue does not contest that (1) he expressly agreed to and is bound by the AAdvantage terms and conditions; (2) the terms and conditions expressly provided that "[b]y accessing your AAdvantage account on aa.com, *you agree to the aa.com site usage policy*;" (3) the site usage policy was available to him directly by a hyperlink within the terms and conditions to which he agreed; and (4) the site usage policy included a forum selection clause that required him to bring this action in Texas. Those undisputed facts establish Plaintiff's binding commitment to bring this case in Texas. Plaintiff flatly breached that commitment when he filed this case in Florida.

As a result, Plaintiff's is left to principally argue waiver. But he neither addresses, nor distinguishes the case law on which American relied in its motion, which affirms that a party does not waive venue arguments premised on a forum selection clause by raising those arguments in its Answer or following a motion to dismiss. That is all that American did here. Moreover, by filing an amended complaint in June 2019, with multiple substantive deadlines pending, Plaintiff effectively restarted the clock on this case. American appreciates that this Court is intimately familiar with the facts of Plaintiff's complaint, but the facts remain that no substantive motion of importance has yet been resolved with respect to his amended complaint. The Court's denial of American's original motion to dismiss (while acknowledging that the motion presented a close call) was the only "merits" activity that had occurred by the time American filed its motion to transfer. Finally, the public interest factors weigh heavily in favor of holding a party to its contract, and permitting resolution of a case against a Texas company, contractually governed by Texas law, in Texas. The motion to transfer should be granted.

**ARGUMENT**

I.   **PLAINTIFF AGREED TO LITIGATE THIS CASE IN TEXAS**

1

Although Plaintiff attempts to blur the issues, he does not dispute the relevant facts that confirm his agreement to litigate this case in Texas. Plaintiff admits that he "was told that, by clicking a log-in button, he was assenting to the AAdvantage terms and conditions." Opp. 19.[1] He admits that a hyperlink was provided to that agreement. *Id.* He admits that he clicked that button to log-in to his AAdvantage account when purchasing the travel at issue in this case. *Id.* at 2. He concedes that the AAdvantage terms and conditions expressly provide that "[b]y accessing your AAdvantage account on aa.com, you agree to the aa.com site usage policy." *Id.* at 4 (quoting ECF 117-1 at 9). He concedes that a hyperlink directly under that statement provides a direct means to "[v]iew the aa.com site usage policy." *Id.* He admits that that policy sets forth a forum-selection clause. *Id.* And he does not dispute that that forum-selection clause would govern this lawsuit. *See* Mot. 7 (noting forum selection clause applies to "[a]ny lawsuit brought by you related to your access to, dealings with, or use of the Site").

Plaintiff's principal argument is that he agreed only to the AAdvantage terms and conditions, not American's site usage policy. But the AAdvantage terms and conditions expressly set forth that *"[b]y accessing your AAdvantage account on aa.com, you agree to the aa.com site usage policy." Id.* at 4 (quoting ECF 117-1 at 9) (emphasis added). That commitment was not "buried," as Plaintiff contends, Opp. 19, but set forth on the face of the terms and conditions to which Plaintiff admittedly agreed in exchange for enjoying the valuable benefit of earning and using frequent flier miles to secure his free airline ticket. As such, Plaintiff's assertion that he "never agreed to, or was even given notice of American's site usage policy," Opp. 3, is false: he admits that "[he] did click something and was told that the click

---

[1] Plaintiff's position is particularly galling given his IT background and since his acknowledgment was in the course of acquiring a free ticket on "miles" though American's voluntary and valuable AAdvantage program. *See* Mot. 1-2.

2

manifested an acceptance of certain terms and conditions," *id.* at 19, and those terms and conditions expressly provided that he agreed to the site usage policy, *id.* at 4.

Plaintiff also complains about the use of a hyperlink setting forth the terms of the site usage policy in full, directly and conspicuously under the statement that "by accessing your AAdvantage account on aa.com, you agree to the aa.com site usage policy." But that complaint is misplaced. As American noted in its opening brief, courts have recognized that "on the cusp of the third decade of the twenty-first century it can fairly be said that following a hyperlink is like turning a page in a printed document. Any reasonable viewer would realize that access to the text of the terms would be simple and immediate." *In re: Daily Fantasy Sports Litig.*, 2019 U.S. Dist. LEXIS 206689 at *53 (D. Mass. Nov. 27, 2019). "The situation might be compared to one in which [a business] maintains a roadside fruit stand displaying bins of apples" with "signs that say '[b]y picking up this apple, you consent to the terms of sales by this fruit stand. For those terms, turn over this stand.'" *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839-40 (S.D.N.Y. 2012) (citation omitted). "[T]he consumer is prompted to examine terms of sale that are located somewhere else. Whether or not the consumer bothers to look is irrelevant." *Id.* "In those circumstances, courts have not hesitated in applying the terms against the purchaser." *Id.*

Indeed, it is Plaintiff, not American, who is out of step with common sense and the principles of contract formation. If the AAdvantage terms and conditions had been set forth in a written agreement, and the contract stated that a party agrees to the site usage policy, followed by "see page 10" or "see Exhibit B," there is no question that those terms would bind the signatory. Plaintiff provides no reason (and no case law) for the proposition that a different result should follow because the site usage policy is set forth in a hyperlink, rather than on some later page

3

that a party could reach by scrolling down.  Plaintiff provides no reason why the former gives any less notice to customers than the latter.  There is none.[2]

No matter how many times he says otherwise, Plaintiff cannot escape that the AAdvantage terms and conditions set forth that Plaintiff agreed to the American site usage policy.  "[A] party who signs a document is presumed to know its contents."  *Klebba v. Netgear, Inc.*, 2019 U.S. Dist. LEXIS 17833, at *9 (W.D. Tex. Feb. 5, 2019) (quoting *In re Intern. Profit Assoc., Inc.*, 286 S.W.3d 921, 923 (Tex. 2009)).  "[P]arties to a contract have an obligation to protect themselves by reading what they sign and, absent a showing of fraud, cannot excuse themselves from the consequences of failing to meet that obligation."  *Id.* (quoting *In re Intern. Profit Assoc., Inc.*, 286 S.W.3d at 924).

## II.   THERE WAS NO WAIVER

Because Plaintiff agreed to the forum selection clause that is the basis for American's motion, his principal effort is to claim that American waived its right to transfer this case.  Plaintiff, however, concedes that American diligently has pursued a transfer of this action at least since filing its motion to transfer in March 2018.  *See* Opp. 11 n.2 ("Plaintiff does not base its waiver argument on American's litigation of the case while awaiting resolution of the initial motion to transfer, American's renewal of its motion, or American's raising of the forum-selection clause in an answer."); *see also* ECF 449 ("Since March 15, 2018, American has continually tried to obtain a substantive ruling on its motion (and related arguments) to transfer venue.").  That leaves Plaintiff to assert that American waived the right to seek a transfer by

---

[2] Plaintiff's complaint that the site usage policy is contained "on the sixth page of the eight-page AAdvantage terms and conditions," *id.* at 4, is a red herring.  Many contracts are longer than a page.  That does not render commitments on page six unenforceable.  In any event, Plaintiff's complaints about the length of the terms and conditions only underscores that by making the site usage policy accessible via hyperlink, American was making its terms more accessible, not less.

virtue of: (1) the period between his filing of the initial complaint and American's motion to transfer venue; (2) filing a motion to dismiss that did not raise the forum-selection clause; and (3) filing a motion to transfer 3 months after first raising the forum-selection clause in its Answer. None of those arguments stand up to scrutiny.[3]

As to the first, courts have explained that Section 1404 sets "no time-limit on when a motion to transfer must be filed." *Willis v. Okeechobee Cty.*, 2012 WL 12845648, at *2 (S.D. Fla. Aug. 16, 2012); *see also Bailey v. B. Braun Med. Inc.*, 2017 WL 1547163, at *3 (N.D. Ga. May 1, 2017) (finding that the plaintiff did not waive argument that alternative venue was more convenient by waiting ten months to move to transfer). "In fact, a Section 1404(a) transfer motion can technically be made at any time. In [*Am. Standard v. Bendix Corp.*, 487 F. Supp. 254, 261 (D. Mo. 1980)] the district court held that a delay of *four years* in bringing a transfer motion did not, in itself, bar the motion." *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 759-60 (E.D. Tex. 2000) (emphasis in original).

The only requirement is that a motion be made with "reasonable promptness." *Willis v. Okeechobee Cty.*, 2012 WL 12845648, at *2. Courts have found that requires simply that a motion not be brought as a "dilatory tactic" or when the other side "would be prejudiced solely because of the delay in bringing the motion." *Mohamed*, 90 F. Supp. 2d at 760; *see also Am. Standard*, 487 F. Supp. at 261 (finding motion to transfer "timely" since the four-year delay had

---

[3] Whatever the Court determines with respect to waiver here, that determination would not govern its review of American's effort to raise plaintiff's agreement to the separate class action waiver in the same paragraph of the site usage policy. *See* ECF 95 (noting Plaintiff's agreement not to bring "any class action lawsuits related to his access to, dealings with, or use of the American Airlines website"). As American has elsewhere noted, Plaintiff himself argued that the appropriate time to raise the class action waiver was in opposition to Plaintiff's motion for class certification. Of course, American believes it has not waived its rights to the contractual agreed forum and choice of law. But, regardless, American unmistakably has not waived Plaintiff's contractual commitment not to pursue a class action.

5

not been shown to be "a dilatory tactic, or that the defendant would be prejudiced solely because of the delay."). Here, by raising venue in its very first pleading, and filing a motion to transfer shortly after Plaintiff's announcement that he no longer intended to file a threatened amendment to his complaint, American was not dilatory and Plaintiff certainly did not suffer any prejudice.

First, American was not dilatory by failing to raise its venue argument in its motion to dismiss. Plaintiff does not dispute that "the proper procedure for enforcing [a forum selection] clause is through a motion to transfer pursuant to § 1404 and not a motion to dismiss for improper venue." *SE. Consulting Grp. v. Maximus, Inc.*, 387 F. Supp. 2d 681, 684 (S.D. Miss. 2005). Importantly, therefore, "a motion to transfer may be timely at any time during the pendency of a case, *including after a motion to dismiss ha[s] been denied.*" *Lockett v. Pinnacle Entm't, Inc.*, 2019 U.S. Dist. LEXIS 157154, at *21 (W.D. Mo. Sept. 10, 2019) (emphasis added). It "is not a defense that must be raised by pre-answer motion or responsive pleading." *Nichols v. Vilsack*, 183 F. Supp. 3d 39, 42 (D.D.C. 2016). Thus, there is "no waiver" of a party's right to enforce a forum selection clause "where parties merely participated in pretrial motions[4] [or] moved to dismiss." *Ferraro Foods v. M/V Izzet Incekara*, 2001 U.S. Dist. LEXIS 12338, at *13 (S.D.N.Y. Aug. 15, 2001); *MSPA Claims 1, LLC v. Halifax Health, Inc.,* 2017 WL 7803813, at *2 (S.D. Fla. Oct. 13, 2017) ("To the extent that Plaintiff argues that Defendant waived its objection to venue by not including it as an affirmative defense in a yet-to-be-filed Answer, or by failing to assert it in Defendant's Rule 12 Motion, the Court disagrees.").

---

[4] The other litigation activities on which Plaintiff relies involve scattered procedural matters like filing an appearance, seeking an extension, and filing a joint scheduling report. But Plaintiff offers no explanation for why such preliminary case activities amount to waiver that caused him prejudice when the law is undeniable that filing a motion to dismiss itself does not. Nothing in the federal rules pertaining to scheduling orders or pretrial conferences indicates that failure to address a forum selection clause works a waiver.

6

Plaintiff also has not shown that he was prejudiced by the fact that American raised its venue defense in its first pleading. Plaintiff relies heavily on the passage of time between when the complaint was filed and when American moved to transfer. But he has not demonstrated *how* that passage of time harmed him. And, importantly, he ignores that the vast majority of that time was consumed simply by awaiting resolution of American's motion to dismiss. If American did not waive its right to seek a transfer by filing a motion to dismiss—and the case law indicates that it did not, *see Lockett*, 2019 U.S. Dist. LEXIS 157154 at *21—then awaiting resolution of that motion certainly cannot amount to waiver either.

Plaintiff's prejudice argument is particularly weak because this Court granted a motion to *stay* discovery during the pending of American's motion to dismiss, limiting the resources either party expended. *See* ECF 42. American also diligently sought an expeditious resolution of its motion, seeking a hearing on the Motion to Dismiss one month after seeking a stay of discovery. ECF 46. And after its Motion to Dismiss was denied, American immediately raised venue as an affirmative defense in its Answer. ECF 95 at ¶ 106. Not even Plaintiff contends any longer that raising a forum-selection clause in American's Answer amounts to waiver. *See* Opp. 11 n.2 ("Plaintiff does not base its waiver argument on … American's raising of the forum-selection clause in an answer.").

That leaves Plaintiff to trumpet the fact that American did not file a motion to transfer for three months after filing its Answer. This is just flatly disingenuous. American filed its Answer on December 8, 2017 and asserted that the case belonged in Texas. ECF 95 at ¶ 106. One week later, the parties entered into a two-month informal stay of discovery while they mediated the case. *See* ECF 132 at 2; *See* Exhibit A, 12/22/2017 Email from H. Ocariz to A. Schultz confirming mediation. Moreover, Plaintiff also continuously represented during this time-period

that he would be amending his Complaint to add new claims and possibly new parties, going so far as to send its proposed complaint to both American and this Court and commit to filing it, *see, e.g.*, ECF 117-6 (Email of A. Schultz to J. Goodman); ECF 117-7 at 42:17-23.  Plaintiff only changed course and stated that he would not be amending anytime soon on February 21, 2018.  *See* ECF 132 at 2-3.  American filed its motion to transfer three weeks later.  There is nothing improper about American not moving to transfer the case until it knew whether an amendment would be filed.  This can hardly be labeled dilatory.  *Willis*, 2012 WL 12845648, at *2 (there is "no time-limit on when a motion to transfer must be filed").  And in any event, to the extent that Plaintiff created the delay by alleging he was going to add claims to the case imminently (perhaps as part of his mediation strategy), he should not be able to capitalize on his own misdirection now.[5]

### III. BECAUSE PLAINTIFF AGREED TO THE FORUM SELECTION CLAUSE, AND THERE IS NO WAIVER, TRANSFER IS PROPER

The Court asked about discretion.  In the face of an enforceable forum selection clause, the discretionary bases for a court to refuse to enforce it are quite limited and inapplicable here.  "Forum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances."  *Krenkel v. Kerzner Int'l Hotels Ltd.,* 579 F.3d 1279, 1281 (11th Cir. 2009).  "The party seeking to avoid the forum selection clause bears the burden of showing exceptional circumstances, predicated on public interest considerations to justify disturbing the forum selection clause."  *McArthur v. Kerzner Int'l Bahamas Ltd.*, 607 F. App'x 845, 847 (11th Cir. 2015).

---

[5] Because Plaintiff elected to file an amended complaint in June 2019, it is particularly difficult for him to show prejudice.  Indeed, no Answer has yet been filed to the operative complaint, nor any substantive motion yet resolved with respect to it.

8

This means that courts employing their discretion to decline enforcement of a contractual forum selection clause are restricted to evaluating public interest factors such as whether "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Krenkel,* 579 F.3d at 1281. "[T]he delicate and undefined power of courts to declare a contract void as contravening public policy should be exercised with great caution, and only in cases free from substantial doubt." *Davis v. Oasis Legal Fin. Operating Co.*, 936 F.3d 1174, 1178 (11th Cir. 2019).

The factors listed above rarely justify straying from a valid forum selection clause, and this case is no different. First, there was clearly no fraud or overreaching—Plaintiff has not pled or argued otherwise. He voluntarily participated in the AAdvantage program, agreed to be bound the applicable terms and conditions, and reaped the benefits by obtaining free airline tickets. ECF 126 at 12; *See* ECF 420-1 at 30 ("Plaintiff did click something and was told that the click manifested an acceptance of certain terms and conditions."). Second, enforcing the venue provision would not deprive Plaintiff of his day in court. He will have every opportunity to litigate this case and in the forum to which he agreed—the Northern District of Texas. Third, the chosen law would not deprive Plaintiff of a remedy, as he can pursue his case under Texas law.

Finally, enforcement of the forum selection clause would not contravene public policy. Plaintiff argues that permitting transfer now would allow a party "seek multiple rulings on the merits and then seek a transfer to another court only after receiving adverse rulings." ECF 450.[6] But the only substantive ruling that was issued in this case was the denial of American's motion

---

[6] Nor is American to blame for complying with deadlines in various pretrial orders from the Court regarding the filing of motions, such as summary judgment, while its motion to dismiss and venue motion remained pending.

to dismiss the original complaint—which Plaintiff has since amended in response to facts learned in discovery that refuted his original theory of the case. Every other substantive motion in this case has been filed *after* this Court agrees American was "continually try[ing] to obtain a substantive ruling on its motion (and related arguments) to transfer venue." ECF 449.[7]

There is also no merit to the contention that a Texas court would start over at square one and disregard the efforts of the parties up to this point.[8] *Rothschild Connected Devices Innovations, LLC v. The Coca-Cola Co.,* 2016 WL 1546427, at *7 (S.D. Fla. Apr. 15, 2016) (finding "disingenuous" assumption that "the parties would begin at square one" upon transfer). Finally, although Plaintiff invokes "administrative difficulties flowing from court congestion" (ECF 450), courts properly accord that "little or no weight." *See Morse v. Sun Int'l Hotels Ltd.*, 2001 WL 34874967, at *6 (S.D. Fla. Feb. 26, 2001).

## CONCLUSION

For the foregoing reasons, this matter should be transferred to the Northern District of Texas.

---

[7] Of course, American acknowledges and appreciates the time and effort this Court has put into the many docket entries, hearings, and motions it has reviewed. Because none of the key substantive pending motions with respect to Plaintiff's amended complaint have yet been resolved, however, the transferee court would not need to write over a long record of substantive decisions on the operative complaint.

[8] Plaintiff notes that his attorneys have incurred legal fees. But that should be accorded little weight. First, those attorneys presumably read the contract and participated in the determination to file in Florida in violation of the forum selection clause. Second, there is no doubt they would be permitted to represent the plaintiff in Texas. Plaintiff's attorneys have had no problem to date traveling to take depositions in Texas and Virginia, and subpoenaing regulators in other states. Finally, the overwhelming majority of the fees must have been incurred *after* the point at which even Plaintiff concedes that American was diligently seeking transfer to Texas.

Dated:  December 23, 2019

Respectfully submitted,

/s/ Humberto H. Ocariz
Humberto H. Ocariz
hocariz@shb.com
Florida Bar No.: 740860
**SHOOK, HARDY & BACON L.L.P.**
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305.358.5171
Facsimile: 305.358.7470

-- and --

James E. Brandt (*Pro Hac Vice*)
james.brandt@lw.com
Elizabeth (Betsy) Marks (*Pro Hac Vice*)
betsy.marks@lw.com
**LATHAM & WATKINS, LLP**
885 Third Avenue
New York, New York 10022-4834
Telephone: 212.906.1200
Facsimile: 212.751.4864

*Attorneys for American Airlines, Inc.*

11

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on December 23, 2019, a true and correct copy of the foregoing was filed using the Court's CM/ECF system and was served on all counsel or parties of record on the attached Service List by the method indicated.

               By: /s/ Humberto H. Ocariz
                  HUMBERTO H. OCARIZ

**SERVICE LIST**

| | |
|---|---|
| Scott B. Cosgrove, Esq.<br>scosgrove@leoncosgrove.com<br>Alec H. Schultz, Esq.<br>aschultz@leoncosgrove.com<br>Jeremy Kahn, Esq.<br>jkahn@leoncosgrove.com<br>John R. Byrne, Esq.<br>jbyrne@leoncrosgrove.com<br>Jordi Martínez-Cid, Esq.<br>jmartinez-cid@leoncosgrove.com<br>**LEÓN COSGROVE LLC**<br>255 Alhambra Circle, Suite 800<br>Coral Gables, Florida 33134<br>Telephone: 305.740.1975<br>Facsimile: 305.437.8158<br><br>(Service via CM/ECF)<br><br>*Counsel for Plaintiff* | Humberto H. Ocariz, Esq.<br>hocariz@shb.com<br>**SHOOK, HARDY & BACON L.L.P.**<br>Miami Center, Suite 3200<br>201 South Biscayne Boulevard<br>Miami, Florida 33131<br>Telephone: 305.358.5171<br>Facsimile: 305.358.7470<br><br>(Service via CM/ECF)<br><br>James E. Brandt, Esq.<br>james.brandt@lw.com<br>Elizabeth (Betsy) Marks, Esq.<br>betsy.marks@lw.com<br>**LATHAM & WATKINS, LLP**<br>885 Third Avenue<br>New York, New York 10022-4834<br>Telephone: 212.906.1200<br>Facsimile: 212.751.4864<br><br>(Service via CM/ECF)<br><br>*Counsel for American Airlines, Inc.* |