UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

CASE NO.: 4:20-cv-00114-O

KRISTIAN ZAMBER, on behalf of
himself and all others similarly situated,

        Plaintiffs,                                   **CLASS ACTION**

v.

AMERICAN AIRLINES, INC.,

        Defendant.
_____/

**PLAINTIFF'S MOTION TO RE-TRANSFER AND BRIEF IN SUPPORT**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ........................................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................................................. 2

      A.     Plaintiff never agrees to any agreement with a forum-selection clause ................... 2

      B.     American waived any challenge to venue ............................................................... 3

SUMMARY OF ARGUMENT ........................................................................................................... 9

ARGUMENT AND AUTHORITIES ................................................................................................. 13

      A.     American waived any challenge to venue ............................................................. 13

      B      The forum-selection clause is unenforceable because Plaintiff never
               agreed to it ............................................................................................................ 18

      C.     Public factors require venue to remain in Florida ................................................ 23

CONCLUSION ............................................................................................................................ 25

CERTIFICATE OF CONFERENCE ................................................................................................. 27

CERTIFICATE OF SERVICE ......................................................................................................... 28

# TABLE OF AUTHORITIES

**Cases**                                                                         **Page(s)**

*Adaptix, Inc. v. HTC Corp.*,
   937 F. Supp. 2d 867 (E.D. Tex. 2013) .................................................................... 24

*Am. Airlines, Inc. v. Rogerson ATS*,
   952 F. Supp. 377 (N.D. Tex. 1996) ...................................................................... 25

*Apache Prods. Co. v. Emp'rs Ins. of Wausau*,
   154 F.R.D. 650 (S.D. Miss. 1994) ....................................................................... 24

*ARI Mut. Ins. Co. v. Hogen*,
   734 So. 2d 574 (Fla. Dist. Ct. App. 1999) ........................................................... 14

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,
   571 U.S. 49 (2013) ............................................................................................... 23

*Brown v. Petrol. Helicopters, Inc.*,
   347 F. Supp. 2d 370 (S.D. Tex. 2004) ................................................................. 17

*Com–Tech Assocs. v. Computer Assocs. Int'l, Inc.*,
   938 F.2d 1574 (2d Cir. 1991) ............................................................................... 18

*Crawford v. Beachbody, LLC*,
   2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ....................................................... 20

*E. & J. Gallo Winery v. Encana Energy Servs., Inc.*,
   388 F. Supp. 2d 1148 (E.D. Cal. 2005) ............................................................... 24

*Flying Diamond-W. Madisonville L.P. v. GW Petrol., Inc.*,
   2009 WL 2707405 (Tex. App. Aug. 26, 2009) ..................................................... 14

*Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D.N.Y. 2012) ............................................................ 19, 21

*IBEW-NECA Sw. Health & Ben. Fund v. Duvall Elec., LLC*,
   2011 WL 711005 (N.D. Tex. Feb. 28, 2011)....................................................... 25

*IT Strategies Grp., Inc. v. Allday Consulting Grp., L.L.C.*,
   975 F. Supp. 2d 1267 (S.D. Fla. 2013) .......................................................... 20, 21

*Mears v. Montgomery*,
   2004 WL 964093 (S.D.N.Y. May 5, 2004) ......................................................... 17

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017)................................................................................... 21

*Morrell v. Wayne Frier Manufactured Home Ctr.*,
   834 So. 2d 395 (Fla. Dist. Ct. App. 2003) ........................................................... 14

*Moto Photo, Inc. v. K.J. Broadhurst Enter., Inc.*,
   2003 WL 298799 (N.D. Tex. 2003) ...................................................................... 14

*Nicosia v. Amzaon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016) ................................................................................. 21

*Patent Harbor, LLC v. Twentieth Century Fox Home Entm't, LLC*,
   2012 WL 1903875 (E.D. Tex. May 25, 2012) ......................................... 14, 17, 25

*Perlman v. Delisfort-Theodule*,
   451 F. App'x 846 (11th Cir. 2012) ................................................................. 13, 24

*Perry Homes v. Cull*,
   258 S.W.3d 580 (Tex. 2008) ................................................................................ 18

*Peteet v. Dow Chem. Co.*,
   868 F.2d 1428 (5th Cir. 1989) ............................................................................. 13

*Phillips v. Neutron Holdings, Inc.*,
   2019 WL 4861435 (N.D. Tex. Oct. 2, 2019) ....................................................... 18

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) ............................................................................................. 23

*S & H Contractors, Inc. v. A.J. Taft Coal Co.*,
   906 F.2d 1507 (11th Cir. 1990) ........................................................................... 16

*SGIC Strategic Glob. Inv. Capital, Inc. v. Burger King Europe GmbH*,
   839 F.3d 422 (5th Cir. 2016) ............................................................................... 14

*Smith v. Federated Fin. Corp. of Am.*,
   2012 WL 682258 (Tex. App. Mar. 1, 2012) ........................................................ 14

*Swift v. Zynga Game Network, Inc.*,
   805 F. Supp. 2d 904 (N.D. Cal. 2011) ................................................................. 20

*U.S. Money Reserve, Inc. v. Kagan*,
   2019 WL 1313469 (W.D. Tex. Jan. 29, 2019) ..................................................... 19

*Utilities Mktg. Grp., LLC v. Warrick*,
   No. 8:15-CV-1966-T-26TBM, 2016 WL 3447528 (M.D. Fla. June 23, 2016) ...... 23

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) ............................................................................................. 25

*Willis v. Okeechobee Cty.*,
   2012 WL 12845648 (S.D. Fla. Aug. 16, 2012)................................................................. 13, 24

<u>Rules</u>

Fed. R. Civ. P. 26(a)(1)(A)(ii) ......................................................................................................... 5

## INTRODUCTION

In a comprehensive fifty-page order, the magistrate judge who has ruled on every substantive issue in this case for the last three and a half years *denied* Defendant American Airlines, Inc.'s ("American's") bid to transfer this case from the Southern District of Florida to the Northern District of Texas. [ECF No 457.] The magistrate judge correctly held that American waived any right it may have had under a forum-selection clause because it engaged in significant delay in raising the issue of transfer and it repeatedly acted inconsistently with an alleged right to transfer—and in so acting, severely prejudiced Plaintiff. [*Id.* at 29–39.] The magistrate judge also correctly found that, "[b]ased on the substantial record of this case, it would be unfair, not only to Plaintiff, but also to the transferee federal district court in Texas and the public interest, to transfer the case at this late stage." [*Id.* at 42.] The court in the Southern District of Florida was undoubtedly "intimately familiar with the record, facts, issues, and law in this case," and the magistrate judge correctly observed that "a transfer now would require significant delay and duplication of judicial effort." [*Id.* at 42–43.]

Nevertheless, in a perfunctory five-and-a-half-page order (ignoring key facts and issues), the district court judge reversed the magistrate judge and transferred this case to this district. [ECF No. 474.] This Court thus inherited a three-and-a-half-year-old case with close to 500 docket entries and multiple pending substantive motions. Despite transferring this case, the district court judge in the transferor court suggested that Plaintiff could move to transfer the case back to the Southern District of Florida, where it originated. [ECF No. 477 at 2] (noting that "Plaintiff is not without his remedies" and citing case law stating that a re-transfer would be the proper remedy). For the reasons stated in the magistrate's original order and because the purported forum-selection clause is unenforceable as a matter of law, it was improper for this case to be foisted upon this

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

Court, and this Court should transfer this case back to Plaintiff's chosen forum, the Southern District of Florida.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  Plaintiff never agreed to any agreement with a forum-selection clause.

American's motion to transfer this case to this district was based on its claim that Plaintiff agreed to the "site usage policy" of its website, which contains a forum-selection clause. But that is simply not true. While Plaintiff may have agreed to *other* agreements on American's website, he never agreed to, or was even given notice of, American's site usage policy.

Plaintiff bought his flight ticket using AAdvantage miles. Before he logged in to his AAdvantage account to make his purchase, Plaintiff was presented with a statement immediately above the log-in button stating: "By logging in, I accept the AAdvantage terms and conditions and privacy policy." [ECF No. 117-1 ¶ 2.] The phrases "terms and conditions" and "privacy policy" were links to *those* documents. [*Id.*] Importantly, neither the AAdvantage terms and conditions nor the privacy policy contain a forum-selection clause.

Clicking the "terms and conditions" link opened a second window with the AAdvantage terms and conditions. In this new window, on the sixth page of the eight-page AAdvantage terms and conditions, within a list of multiple bullet-point paragraphs under the heading "Redeeming AAdvantage miles," one of the many bullet-point paragraphs states:

> American Airlines assumes no responsibility for and is not liable for any unauthorized access by third parties to a member's account and/or account information, including but not limited to any unauthorized award transaction made from the account, except as provided under applicable laws. American assumes no obligation or duty to re-credit any unauthorized mileage withdrawal made by third parties; however, American reserves the right to review, in its sole discretion, requests for re-crediting unauthorized mileage withdrawals provided such request is made to American within three months of the unauthorized withdrawal. By accessing your AAdvantage account on aa.com, you agree to the aa.com site usage policy.

[ECF No. 117-1 at 9.] A hyperlink under this paragraph—which until the last sentence only addressed unauthorized third-party access to a member's account—states: "View the aa.com site usage policy." [*Id.*] Clicking *that* link opens a *third* window with the site usage policy. On the *sixth* page of the site usage policy, there is a forum-selection clause.

Critically, the site usage policy, AAdvantage terms and conditions, and privacy policy are three distinct documents. American claims that, by clicking a button above which was the statement "By logging in, I accept the *AAdvantage terms and conditions* and *privacy policy*," Plaintiff *also* agreed to a third unidentified site usage policy. It is undisputed that there was no mention of the site usage policy on the screen with the log-in button. And it is undisputed that American told Plaintiff that clicking the log-in button would mean he agreed to only two *other* agreements that were *not* the site usage policy and that did *not* contain any forum-selection clause.

Moreover, the site usage policy, by its terms, is wholly inapplicable to the insurance transaction at issue in this case because it is limited to transactions **with American Airlines**. [ECF No. 117-2] (Site Usage Policy, at "Limitations on your use," stating that site exists to "transact business with American Airlines"). Here, Plaintiff's transaction, by American's own admission, was with the third-party insurance company. And not only that, Plaintiff entered into a separate agreement with the insurer (the insurance policy), and American's site usage policy expressly says "the terms of the specific agreement [insurance policy] shall govern" over the site usage policy. [*Id.*]

### B.  American waived any challenge to venue.

Plaintiff filed this action in the Southern District of Florida on September 12, 2016 and served American three days later. [ECF Nos. 1 and 7.] American's first filing in this case was a notice of appearance by its counsel. Nothing in the notice suggested that it was a limited

appearance, that there was any issue regarding venue, or that a forum-selection agreement existed between the parties. [ECF No. 9.] On the same day, American filed an unopposed motion for extension of time to respond to the complaint, which likewise did not suggest any dispute regarding venue. [ECF No. 10.] Next—and most critically—American filed its motion to dismiss on November 7, 2016. [ECF No. 13.]

American's motion to dismiss failed to raise any venue issue. More importantly, and directly inconsistent with a dispute regarding venue, American sought substantive rulings *on the merits* from the Florida court *based on Florida law* (and Eleventh Circuit law). In particular, it argued that Plaintiff failed to state a claim and that Plaintiff's claims were preempted by the Airline Deregulation Act. American never suggested that Texas law or the law of any other jurisdiction should apply. Thus, briefing by both sides was based on Florida and Eleventh Circuit law.

While American's motion to dismiss was pending (and not yet fully briefed), the parties filed a Joint Planning and Scheduling Report. [ECF No. 16.] This report, too, did not contain any reference to a dispute regarding venue. Instead, under the section for "proposals for the formulation and simplification of issues," American stated the following: "American believes that there are **two** *threshold* legal issues in this case—standing and preemption under the Airline Deregulation Act—*that will completely dispose of this case* and therefore should be addressed by the Court *as soon as practicable*." [ECF No. 16 at 3] (emphasis added). Conspicuously absent from the list of "threshold issues" that should be addressed "as soon as practicable" was any challenge to venue. Instead, consistent with its motion to dismiss, American sought immediate rulings *on the merits* from the Florida court. Also in the Joint Planning and Scheduling Report, in the section for "other matters" that may aid the court "in the fair *and expeditious* administration and *disposition* in this action," American did not so much as hint at any challenge to venue. [*Id.* at 5] (emphasis added).

4

Likewise, there was no mention of anything regarding venue in the section of the report for any other orders the court should issue under Rule 16(b) or (c). [*Id.* at 7.] That is so even though American would, almost three years later, admit that prioritizing the ruling on a motion to transfer venue is such a matter that should be considered under Rule 16. [ECF No. 374.]

Two days after the parties filed their Joint Planning and Scheduling Report, American served its initial disclosures. [ECF No. 450-1.]. Initial disclosures must provide a copy or description of all documents that the disclosing party has in its possession "and may use to support its claims *or defenses*." Fed. R. Civ. P. 26(a)(1)(A)(ii) (emphasis added). But nowhere in its initial disclosures did American refer to any challenge to venue, nor did it list its "site usage policy" as a document it would rely upon to support any defense. To be sure, American did not even describe in general terms any document containing a purported forum-selection clause. Nor did American list any witness with knowledge regarding such a defense.

Back to the motion to dismiss, on January 13, 2017, American filed a reply in support of the motion, which also did not raise any issue regarding venue. Again, American made clear that it sought a dismissal "with prejudice," i.e., a ruling on the merits. [ECF No. 21 at 2.] And again, American argued Florida and Eleventh Circuit law, not Texas or Fifth Circuit law.

On January 17, 2017, American moved to stay discovery. [ECF No. 22.] That motion is just as notable for what it was based on as it is for was it is *not* based on. American did not base its motion on any argument that the case should proceed in a different venue. Instead, consistent with its overall strategy, the premise of American's motion was that its motion to dismiss "raises two threshold matters that dispose of the entire action." [ECF No. 22 at 1.] Once again, American contended that the "threshold" issues were dispositive merits-based issues and that *the Florida court* should decide those "threshold" issues. If American really cared about judicial economy, it

would have sought a stay of any judicial labor on its motion to dismiss until the issue of venue was decided. But American raised no venue issue. American sought a stay of discovery to save *its* resources while the Florida court and Plaintiff expended their resources on issues of Florida law that, now according to American, should be decided by this transferee Court under Texas law.

In fact, American specifically requested that both the motion to stay *and* the motion to dismiss be referred to the magistrate judge *in Florida*. [ECF No. 31 at 1] ("American respectfully requests the Court to refer its Stay Motion to U.S. Magistrate Judge Jonathan Goodman . . . ."); [*id.* at 1 n.1] ("[I]t it may also make sense for the Court to refer the motion to dismiss to Magistrate Judge Goodman for a report and recommendation."); [*id.* at 2] ("American respectfully submits that a referral of the Stay Motion, and possibly the motion to dismiss as well, will resolve these problems and provide the parties with necessary guidance in the case."). In other words, American expressly requested that *both* the magistrate judge and then the district court judge *in Florida* expend judicial labor on the merits of this case. And that request was granted. [ECF Nos. 38 and 39.] American's motion to stay discovery was also granted. [ECF No. 42.]

American also requested a hearing before the court *in Florida* on its motion to dismiss. [ECF No. 33 at 1.] Like its prior filings, American's request repeatedly emphasized the "case-dispositive" nature of the arguments (based on Florida law) raised in its motion to dismiss. That request was granted. On March 7, 2017, the magistrate judge in Florida held a 3-hour-and-15-minute hearing on the motion to dismiss. [ECF No. 58.] Not once during that extensive hearing did American raise any objection to venue or mention a forum-selection clause. And that was not for lack of opportunity to do so. [ECF No. 61 at 115:11–17] ("THE COURT: "I would still be happy to listen to any additional points that you wanted to make on the off chance that we didn't cover every conceivable point that you intended to bring up. So since it's defendant's motion to

dismiss, are there any points that you wanted to call to my attention that we haven't already covered today?"). In fact, at that hearing, in response to a question about the magistrate judge's prior purchases of trip insurance, both parties expressly consented to the Florida court deciding this case. [*Id.* at 6:10–13] ("MR. SCHULTZ: Understood, Your Honor. Yes, we would consent to your continued jurisdiction. MR. OCARIZ: *Likewise from American, Your Honor, we would consent.*" (emphasis added)). Again, American never mentioned a venue challenge or forum-selection clause.

On March 29, 2017, the magistrate judge issued a report and recommendation that the motion to dismiss be denied. [ECF No. 65.] Foreshadowing things to come, American regretted its strategy and filed objections to the report and recommendations, effectively seeking a re-adjudication of the issues by the Florida district judge. [ECF No. 68.] Again, in its objections, American never suggested that it had any challenge to venue in Florida and instead sought a merits ruling by the district judge in Florida. And again, the parties' briefing focused on Florida and Eleventh Circuit law.

Simultaneously with its objection to the report and recommendation, American filed a motion to certify "for interlocutory review *by the Eleventh Circuit Court of Appeals*" the issue of whether Plaintiff's claims are preempted in the event the district court adopted the report and recommendation. [ECF No. 69 at 1] (emphasis added). Again, American never mentioned any forum-selection clause or venue challenge, and instead sought further review by the court of appeals having jurisdiction over *the Florida venue*. And again, American emphasized that its argument "would be dipositive of the litigation." [*Id.* at 6.] On October 17, 2017, the district judge in Florida overruled American's objections and denied its motion to certify. [ECF No. 79.]

On November 13, 2017, American moved for a case management conference. [ECF No.

81.] American *still* did not raise any challenge to venue. Instead, American *still* sought an expeditious ruling on the merits from *the Florida court*. The purpose of the requested case management conference was "to prioritize discovery and resolution of the case-dispositive preemption issue." [ECF No. 81 at 1.] While not raising any argument it apparently had in its back pocket that venue should be transferred pursuant to a forum-selection clause, in its motion American feigned concern for "prevent[ing] wasteful expenditure of both the Court's and the parties' resources." [*Id.* at 2.] Yet American wanted to prioritize the Florida court (and Plaintiff) expending *further* judicial labor on its preemption defense and still kept mum about the alleged forum-selection clause.

On December 8, 2017—15 months and 95 docket entries after this case was filed—American *finally* raised the issue of a forum-selection clause in its answer and affirmative defenses. Sort of. American's one-paragraph twentieth affirmative defense was for "improper venue." [ECF No. 95 ¶ 106.] The affirmative defense states in conclusory fashion that "Plaintiff has agreed that the proper venue for any lawsuit arising from Plaintiff's access to, dealings with, or use of the American Airlines website or mobile application must be brought in the state or federal courts of Tarrant County, Texas." [*Id.*] There is no mention of the site usage policy.

Inexplicably, American then waited an additional *three months* (and 22 more docket entries) to actually move to transfer venue. [ECF Nos. 115 and 117.] During that three-month delay, multiple discovery and other motions were filed, several hearings and depositions occurred, and mediation took place (in Miami). In short, American waited 15 months to ever even suggest a challenge to venue and waited more than 18 months before ever filing a motion to transfer venue. And during that time, American heavily litigated this case and sought multiple rulings on the merits based on Florida and Eleventh Circuit law, expending both the parties' and the Florida court's

8

resources. All the while, American supposedly secretly opposed venue in Florida.

As an epilogue to American's delay, the motion to transfer venue was denied as moot after the parties filed a notice of settlement. [ECF No. 212.] After the settlement fell through, American failed to renew its motion to transfer venue, instead once again litigating this case on the merits. While it initially failed to refile its motion, three years into this case American filed several motions proclaiming a goal of preserving judicial resources and seeking to delay court rulings on substantive issues in favor of prioritizing a ruling on venue. [ECF No. 374 at 5] ("American respectfully submits that resolving the pending matters in the order outlined above [venue motion before motion to dismiss and motion for class certification] will significantly aid in orderly and efficient case management in this matter and thereby conserve judicial and party resources."); [ECF No. 375 at 2] ("The primary reason for both the Rule 16 Motion and this continuance [of the class certification hearing] request is efficiency, since American's Venue Motion could end the need for any continued litigation in this forum . . . ."). American has never explained where its concern for judicial economy was when it earlier sought rulings on the merits on the same issues re-raised in its new motion to dismiss without disclosing any venue issue.

The magistrate judge in Florida ultimately permitted American to belatedly refile its transfer motion seven months and over 150 docket entries after the case was reopened following the denial of Plaintiff's motion to enforce the settlement. [ECF No. 438.] In a thorough, fifty-page order, the magistrate judge denied American's motion on several grounds, including waiver and public-interest factors. [ECF No. 457.] American filed an objection to the magistrate's order, and the district court reversed the magistrate and transferred this case to this Court. [ECF No. 474.]

### SUMMARY OF ARGUMENT

The magistrate judge put it perfectly: "From an overarching perspective, American waited

until 18 months after being served with the Complaint before it filed its venue transfer motion. It waited 16 months after filing its motion to dismiss to file its motion to transfer venue. American did not merely sit idly by during these gaps. To the contrary, it actively litigated the case and remained silent about the venue-selection clause until after it lost on the merits of the dismissal motion." [ECF No. 457 at 35.] Further, "American's delay in invoking the forum-selection clause (as well as its actions during that delay) have prejudiced Plaintiff." [*Id.* at 37–38.]

American's motion to transfer was a ploy to play Monday-morning quarterback. At first, American's strategy was simple: Get a ruling *on the merits* from *the Florida court* as expeditiously as possible. When this case was first filed, American never challenged the Southern District of Florida as the venue to adjudicate this case. To the contrary, American repeatedly sought rulings on the merits via a motion to dismiss, a challenge to the report and recommendation that the motion to dismiss be denied and leave to file an interlocutory appeal *to the Eleventh Circuit* regarding a dispositive issue. American also repeatedly led the Florida court and Plaintiff to believe that the issues raised in its motion to dismiss were what American considered to be the "threshold" issues in this case.

Only after American received adverse rulings on these "threshold" issues did it change course and claim for the first time that a Texas court should decide them. Out of a purported newfound concern for judicial economy, American contended that the issue of venue is *the* threshold issue and—despite requiring the Florida court to labor over prior substantive motions— that its motion to transfer should be decided before any other motion. That included its new motion to dismiss, which re-raises the same arguments in its prior motion to dismiss that the Florida court already rejected.

One has to admire American's ingenuity. Unhappy with the result of its initial motion to

dismiss, American raised the exact same arguments in a new motion to dismiss. Then, despite previously urging the Florida court to decide those issues without disclosing the purported existence of a forum-selection agreement, it *later* told the Florida court that it should save judicial resources by deciding the motion to transfer first. Such a strategy allowed American to get a second bite at the apple on the dismissal arguments that the Florida court already rejected. But American should have been stuck with its tactical decision to have the Florida court to decide the merits of this case (under Florida law). It should not get a do-over.

The Florida district judge's transfer of this case was improper, and this case should be re-transferred, for several independent reasons. First, a more clear-cut case of waiver could not be made. As the Florida magistrate judge observed, there is an unexplained "16-month gap" between American's motion to dismiss—which sought a ruling on the merits and "did not mention, let alone discuss, the forum selection clause"—and its initial motion to transfer venue. [ECF No. 449.] American should not be allowed to seek a ruling on the merits from a court in Florida and then, more than a year later, claim that the case should be transferred to another venue. Waiver is an act that is inconsistent with an alleged right. Seeking multiple rulings on the merits from the Florida court based on Florida law is entirely inconsistent with claiming that the case should be decided by a Texas court under Texas law. And American's delay significantly prejudiced Plaintiff (and the Florida court). Plaintiff has expended vast resources litigating this case on the merits in Florida under Florida and Eleventh Circuit law, which resources are now completely wasted due to the transfer to this Court with the case set to proceed under Texas law. And Plaintiff will suffer further delays in resolving a case that is already more than three years old, including having now lost his February 2020 trial date.

Second, Plaintiff never agreed to any agreement with a forum-selection clause in the first

place. American's delay in raising the forum-selection clause is thus understandable in one respect—American did not immediately raise it because it believed a motion to transfer venue would be meritless. While American made a strenuous effort to force the facts of this case into the "clickwrap" line of cases, American (and the district judge) ignored that the only "clickwrap" here was for two agreements that *did not* contain any forum selection clause. When Plaintiff clicked a button to log in to his AAdvantage account, the text above the log-in button stated that logging in would constitute acceptance of *two* agreements: the AAdvantage terms and conditions and the privacy policy, and links were provided to both of those agreements. *Neither* of those documents contain a forum-selection clause. Instead, the AAdvantage terms and conditions contained an inconspicuous link to a *separate* site usage policy that was buried several pages into the AAdvantage terms and conditions. The separate site usage policy, which Plaintiff never agreed to or was given notice of, is the only document that contains a forum-selection clause. There is not a single case finding such a hyperlink within a hyperlink to be enforceable clickwrap, and as stated, the plain terms of the site usage policy make it wholly inapplicable to Plaintiff's transaction with a third-party insurance company.

Finally, even if there were a valid and un-waived forum-selection agreement (there is not), the magistrate judge correctly observed that public-interest factors weighed in favor of denying transfer. American's motion is really a transparent attempt at forum shopping. American repeatedly sought rulings on the merits from the Florida court. It only sought to transfer venue after American perceived that the case was not going its way. Dissatisfied with several rulings in Florida, it was only then that American changed its strategy from seeking a ruling on the merits from the Florida court to seeking to get out of Florida—based on a forum-selection clause that was never agreed to in the first place. Failing to re-transfer this case to its original venue would only

encourage such gamesmanship by other litigants in the future. Further, it was both unfair and improper for the Florida district judge to foist this complex case that has been litigated for years on a new judge completely unfamiliar with the record, law, facts, and issues. American's delay and other public-interest factors provide this Court discretion to re-transfer this case even if the forum-selection clause was not waived (it was) and is otherwise enforceable (it is not).

## ARGUMENT AND AUTHORITIES

### A.  American waived any challenge to venue.

While no valid forum-selection agreement exists between the parties, the Court need not even reach that issue. To borrow from American's terminology, as a "threshold" issue, American waived any challenge it had to venue in the Southern District of Florida by not raising it until well over a year into this litigation while actively litigating this case and seeking rulings on the merits. American has acted inconsistently with a purported right to invoke a forum-selection clause.

As the Fifth Circuit has stated, "Parties seeking a change of venue should act with 'reasonable promptness.'" *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989). Unsurprisingly, in both Texas and Florida, courts have consistently found that a party's delay in filing a § 1404(a) motion weighs against transfer and can even by itself be sufficient grounds for denying the motion. *See Perlman v. Delisfort-Theodule*, 451 F. App'x 846, 848 (11th Cir. 2012) (affirming denial of venue transfer where "district court found that because [party] had waited roughly one year to request change of venue, transferring the case would have resulted in unnecessary delay and might have prejudiced [opposing party]"); *Willis v. Okeechobee Cty.*, 2012 WL 12845648, at *2 (S.D. Fla. Aug. 16, 2012) ("[T]he prevailing rule is that the movant must act with 'reasonable promptness' in seeking transfer. Failure to act with reasonable promptness, and the likelihood of delay resulting from transfer, may constitute sufficient grounds for denying the

transfer motion." (internal citation omitted)); *Patent Harbor, LLC v. Twentieth Century Fox Home Entm't, LLC*, 2012 WL 1903875, at *6 (E.D. Tex. May 25, 2012) ("Defendants made a calculated choice to accelerate the claim construction process at the expense of promptly filing a motion to transfer. As a result of Defendants' delay in filing its Motion, the Court and the parties expended considerable time and effort into preparing for and conducting a claim construction hearing that might be wasted upon transfer. Accordingly, the Court finds that Defendants' delay in filing the motion weighs against transfer."); *Moto Photo, Inc. v. K.J. Broadhurst Enter., Inc.*, 2003 WL 298799, at *5 (N.D. Tex. 2003) ("The parties have exchanged initial disclosures, amended their pleadings, and conducted preliminary discovery . . . . The timing of plaintiff's motion creates a substantial possibility of undue delay if the case is transferred *and may be denied on that basis alone*." (emphasis added)).

A party waives its right to invoke a forum-selection clause "if it '(1) substantially invokes the judicial process [in derogation of the forum selection clause] and (2) thereby causes detriment or prejudice to the other party.'" *SGIC Strategic Glob. Inv. Capital, Inc. v. Burger King Europe GmbH*, 839 F.3d 422, 426–27 (5th Cir. 2016) (alteration in original).[1] Waiver also occurs "if a party engages in 'conduct so inconsistent with the intent to enforce the right as to induce a

---

[1] *See also Smith v. Federated Fin. Corp. of Am.*, 2012 WL 682258, at *6 (Tex. App.—Houston [1st Dist.] Mar. 1, 2012, no writ) ("Smith waived enforcement of the forum-selection clause by substantially invoking the judicial process to Federated's detriment or prejudice and that his actions in pursuing this issue demonstrated conduct inconsistent with claiming that right."); *Flying Diamond-W. Madisonville L.P. v. GW Petrol., Inc.*, 2009 WL 2707405, at *11 (Tex. App.—Waco Aug. 26, 2009, no writ) ("The right to enforcement of forum selection clauses can, however, be waived."); *Morrell v. Wayne Frier Manufactured Home Ctr.*, 834 So. 2d 395, 395–98 (Fla. Dist. Ct. App. 2003) (finding waiver where party litigated for eleven months with various motions and pleadings); *ARI Mut. Ins. Co. v. Hogen*, 734 So. 2d 574, 576 (Fla. Dist. Ct. App. 1999) (finding waiver when party engaged in "aggressive" litigation for nine months with pleadings, interrogatories, requests for productions, sought hearings, and contested other party's motions and pleadings).

reasonable belief that it has been relinquished.'" *Id.* at 426. Both standards are met here.

First, American substantially invoked the judicial process for eighteen months before ever moving for transfer, and it repeatedly acted inconsistently with an alleged right to enforce a forum-selection clause. Indeed, as the Florida magistrate judge pointed out, there was a "16-month gap" between American's motion to dismiss and its motion to transfer. [ECF No. 449.] And there was actually an 18-month delay in American seeking a transfer since it was first served. American's delay is not the only fact supporting waiver. Perhaps even more important is what American did (and did not do) during that delay. Although the facts are more fully described *supra*, to recap: (1) American moved to dismiss seeking a ruling on the merits; (2) American argued only Florida and Eleventh Circuit law; (3) American did not disclose anything related to its venue defense in the joint scheduling plan, despite purporting to list "threshold issues" (4) American did not disclose any document or witness relevant to its venue defense in its initial disclosures (which may alone be a waiver); (5) American sought a stay of discovery to preserve its own resources while requesting that the Florida invest its own resources in deciding merits-based issues raised in its motion to dismiss; (6) American sought further judicial resources to be expended by requesting referral to the magistrate judge and by requesting a hearing (at which it never raised any issue regarding venue); (7) American expressed agreement to the Florida court's jurisdiction at the hearing; (8) American sought review of the magistrate's report and recommendation by the Florida district court—still arguing Florida law; (9) American sought certification for review by the Eleventh Circuit; (10) American participated in mediation in Miami; (11) American participated in discovery, including seeking and obtaining discovery from Plaintiff and attending multiple depositions; (12) multiple hearings took place, including on motions filed by American and discovery hearings; (13) American sought a case management conference to prioritize litigation of

15

its *preemption* defense; and (14) after asserting the issue as an affirmative defense, American sat on its alleged rights for *an additional three months* before filing a motion to transfer (during which three months paper discovery, hearings, depositions, and mediation occurred). As the magistrate judge in Florida correctly held, "**all** 14 circumstances cited by Zamber apply to the analysis  and provide a compelling basis for finding that American acted inconsistently and waived the venue-transfer clause." [ECF No. 457 at 35.] Indeed, each of these acts is directly contrary to American's subsequent reliance on a forum-selection clause, and each provides grounds for waiver. Combined, the case for waiver could not be more compelling.

Second, American's delay in invoking the forum-selection clause as well as its actions during that delay have prejudiced Plaintiff. "When determining whether the other party has been prejudiced," the Court "may consider the length of delay in demanding [enforcement] and the expense incurred by that party from participating in the litigation process." *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990). Before American ever raised an issue of a forum-selection clause (which also contains a choice-of-law clause), Plaintiff had gone to great expense litigating this case on the merits—*based on Florida law* (and Eleventh Circuit law). By consistently arguing Florida (and Eleventh Circuit) law in its motions, American acted directly contrary to an alleged forum-selection clause with a Texas choice-of-law provision. If American's motion were granted, all of Plaintiff's—and the Florida court's—work and expenditure of resources would be for nothing. To put a number on it, by the time American got around to filing its transfer motion, Plaintiff's counsel had worked 1,018.30 billable hours on this case for a total of $576,991.50 in legal fees (plus $15,081.63 in costs).[2] [ECF No. 450-2.]

---

[2] Needless to say, much more resources have been expended since American first filed its motion almost two years ago in March 2018.

Plaintiff is also prejudiced because the transfer has and will continue to cause further delays. Plaintiff has lost his February 2020 trial date, which is extremely prejudicial given that this case was already significantly delayed by American's motion to stay discovery (which itself was predicated on American's desire to have *the Florida court* adjudicate supposedly "threshold" merits issues). *Brown v. Petrol. Helicopters, Inc.*, 347 F. Supp. 2d 370, 374 (S.D. Tex. 2004) ("This case is set for trial on January 24, 2005, less than three months from now. Any transfer at this stage of the trial process would necessarily cause significant delay. Therefore, this factor weighs against transfer."); *Mears v. Montgomery*, 2004 WL 964093, at *10 (S.D.N.Y. May 5, 2004) (finding that consideration of trial efficiency weighed against transfer because "[t]o transfer this case now, when it is on the brink of proceeding to trial, would further delay the resolution of plaintiff's claims while wasting the considerable judicial resources thus far expended."); *Patent Harbor*, 2012 WL 1903875, at *5 ("Moreover, transferring a case so close to trial also runs the risk of prejudicing Plaintiff by delaying the resolution of their claims against the Defendants. . . . [T]ransferring the case now would cause Plaintiff to lose its firm trial date in October 2012 in favor of an unknown date.").[3] Also, there will be inherent delays in having this Court suddenly inherit a complex and already heavily-litigated case with a voluminous record. Further, Plaintiff's discovery and overall strategies have been based on Florida and Eleventh Circuit law. If the case remains transferred and the Court finds that Texas law applies, Plaintiff will need to effectively redo discovery and re-depose multiple witnesses. Plaintiff would also have to redo much of its briefing on multiple substantive motions to take into account Texas and Fifth Circuit law.

While sometimes a delay is excusable, here American has no excuse for its delay because

---

[3] Even when American first moved to transfer this case, the scheduling order in place at the time had a trial date that was a mere six months away.

17

it had all the information relevant to its motion to transfer at the outset of this case. American knew that Plaintiff purchased his ticket with AAdvantage miles and logged in to his AAdvantage account to complete his purchase. And American obviously knew what was in the documents hyperlinked on its website, including the site usage policy. This is not a case where a defendant obtained new information in discovery that prompted a motion to transfer venue.

To belatedly suggest that Plaintiff was never in fact permitted to advance claims in Florida and under Florida law nor pursue a class action (after the expenditure of significant time and resources) is the exact type of prejudice that results in a waiver finding. *Perry Homes v. Cull*, 258 S.W.3d 580, 597 (Tex. 2008) (finding waiver in arbitration context and noting "manipulation of litigation for one party's advantage and another's detriment is precisely the kind of inherent unfairness that constitutes prejudice under federal and state law" (citing *Com–Tech Assocs. v. Computer Assocs. Int'l, Inc*., 938 F.2d 1574, 1576–77 (2d Cir. 1991) (finding waiver where request made **18 months after filing and 4 months before trial**))). The magistrate judge thus correctly found that American waived any forum-selection clause, and this Court should re-transfer the case back to the Southern District of Florida.

**B. The forum-selection clause is unenforceable because Plaintiff never agreed to it.**

Courts distinguish "clickwrap" and "browsewrap" agreements. As its name suggests, clickwrap is when a website requires a user to click a button or check a box to acknowledge agreement to a list of terms and conditions presented to the user. *Phillips v. Neutron Holdings, Inc.*, 2019 WL 4861435, at *3–4 (N.D. Tex. Oct. 2, 2019). Clickwrap is generally enforceable. On the other hand, browsewrap is when a website merely provides a link to certain terms and conditions but does not require the user to click any acknowledgment of them. *Id.* The user can continue using the website or make a purchase without being directed to the terms and conditions.

18

Browsewrap agreements are enforceable only when "a website user has actual or constructive knowledge of a site's terms and conditions prior to using the site." *Id.* at *4; *see also U.S. Money Reserve, Inc. v. Kagan*, 2019 WL 1313469, at *4 (W.D. Tex. Jan. 29, 2019) ("[B]rowsewrap agreements, where a notice or hyperlink on a website conditions use of the site upon compliance with certain terms or conditions, are typically unenforceable if the website fails to provide adequate notice of the terms and there is no showing of actual or constructive knowledge of the terms.").

A third type of hybrid agreement is similar to pure clickwrap in that it requires a user to click a button to acknowledge agreement to terms and conditions. But different from clickwrap is that the terms and conditions are only referred to on the screen with the button, and the user must take the extra step of clicking a link to read them. In *Fteja v. Facebook, Inc.*, the court analyzed such "hybrids" and enforced a forum-selection clause in a website's terms of service where a notice below the "Sign Up" button stated, "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service," and the user had clicked "Sign Up." 841 F. Supp. 2d 829, 838–40 (S.D.N.Y. 2012). Relevant here, the court distinguished cases where "[t]he terms and conditions were not visible anywhere on the screen containing the . . . button." *Id.* at 835. It explained that such cases were not controlling because the "Sign–Up page's reference to the Terms of Use *appeared immediately below* the 'Sign–Up' button." *Id.* (emphasis added). The court noted that the agreement was similar to browsewrap because "the terms and conditions were not displayed on the page where the user purportedly assented to the terms. Instead, those terms were visible only by clicking on a hyperlink." *Id.* But the appearance of a link to those terms *on the same page* as the "Sign Up" button, combined with the statement on that page that clicking was an acceptance of the hyperlinked agreement, was enough to render the agreement enforceable. *Id.* at 839–41.

Like in *Fteja*, in every "click through" case where the linked agreement was enforceable,

the link to the terms and conditions that the user was assenting to via her click was on the *same screen* as the button she had to click, was conspicuous *on that screen*, and appeared alongside a notice that clicking the button was an acceptance of the *specifically-referenced and hyperlinked* terms and conditions. *See, e.g.*, *Crawford v. Beachbody, LLC*, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 908, 912 (N.D. Cal. 2011). The absence of those facts here distinguishes this case from a "hybrid clickwrap" case. Here, Plaintiff was told that, by clicking a log-in button, he was assenting to the *AAdvantage terms and conditions* and a *privacy policy*. Hyperlinks were provided for *those two* agreements. Nowhere on the log-in screen was Plaintiff informed of the existence of a *third* agreement that he was supposedly entering into. To learn that, he would have had to click the terms and conditions hyperlink, from that new window scroll down six pages to find a buried reference to the "site usage policy," and then yet again click that hyperlink to open a new window. To say that the supposed agreement to the site usage policy and its forum-selection clause was not conspicuous is an understatement.

These facts contain aspects of both browsewrap and a "click through" agreement. The similarity to a "click through" agreement is that Plaintiff did click something and was told that the click manifested an acceptance of certain terms and conditions. But that is where the similarities end. The terms and conditions that Plaintiff accepted by his click did *not* include the forum-selection clause. Instead, the forum-selection was part of a separate site usage policy, the site usage policy was not hyperlinked or even referenced on the log-in screen, the only reference and link to the site usage policy could be found only after scrolling through multiple pages in a separate "terms and conditions" window, and the reference to the site usage policy is not even conspicuous within that "terms and conditions" window (located six pages in at the end of one paragraph in a list of

20

bulleted paragraphs under a "Redeeming AAdvantage miles" heading). Those facts make the site usage policy much more like browsewrap. *See IT Strategies Grp. v. Allday Consulting Grp.*, 975 F. Supp. 2d 1267, 1283 (S.D. Fla. 2013) (terms and conditions unenforceable where "warning *contained no hyperlink to the online user agreement*, and *did not otherwise alert the user to the existence* or location of any confidentiality or security requirements other than those set forth in the security warning" (emphasis added)).

American's characterization of the site usage policy as a typical clickwrap agreement was wrong. What makes clickwrap enforceable is the *notice* provided to the user that the click manifests assent to a *disclosed* agreement, with the terms of *that agreement* readily available either on the same screen or via a hyperlink on the same screen. *Conspicuousness* is the touchstone of enforceability. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78–79 (2d Cir. 2017); *Nicosia v. Amzaon.com, Inc.*, 834 F.3d 220, 233, 237 & n.5 (2d Cir. 2016); *Fteja*, 841 F. Supp. 2d at 835. Here, Plaintiff was not told that a consequence of his click was agreement to a site usage policy, which was not mentioned at all on the log-in screen. Instead, the hyperlinked agreement within a hyperlinked agreement is directly contrary to what American told Plaintiff the consequences of his click would be: "accept[ing] the AAdvantage terms and conditions and privacy policy."

But now American claims Plaintiff was also assenting to a third agreement. If that were so, a reference and link to the site usage policy should have been included above the log-in button— as was the case with the terms and conditions and privacy policy. *IT Strategies*, 975 F. Supp. 2d at 1280 ("[A] consumer's clicking on a download button does not communicate assent to contractual terms *if the offer did not make clear to the consumer* that clicking on the download button would signify assent to *those* terms." (emphasis added)); *Fteja*, 841 F. Supp. 2d at 835 (explaining that terms and conditions were not enforceable in case where they "were not visible anywhere on the

21

screen containing the download button" and would become visible only if plaintiffs scrolled down to next screen").[4]

Taken to its logical conclusion, if American's argument were accepted, American could have embedded another hyperlink to another agreement in the site usage policy, and that also would be enforceable. And so on. The Court should reject American's "Russian doll" approach to contract formation where a hyperlinked agreement contains a hyperlink to another agreement, which theoretically could then contain a hyperlink to another agreement. If adopted, that would perversely incentivize businesses to bury the most objectionable terms in layers of hyperlinked agreements. It is not too much to ask of website users to click a conspicuous hyperlink to the same document they are told they are agreeing to and on the same page as the click button. But it is unreasonable to expect them to search for additional hyperlinks to new documents, and possibly further hyperlinks within those—especially when the log-in screen says that logging in is acceptance of only *two* expressly listed documents. American fails to cite any case supporting a hyperlink-within-a-hyperlink approach. Instead, it relies solely on traditional clickwrap cases, which are inapplicable.[5]

Finally, even if the Court found Plaintiff did somehow agree to the site usage policy, ***its plain terms make it inapplicable to this case***. The site usage policy, by its terms, is wholly

---

[4] Notably, the AAdvantage terms and conditions also contain a link to the privacy policy. [ECF No. 117-1 at 6.] But rather than rely on the link to the privacy policy within the AAdvantage terms and conditions, American understood that it should also add a link to the privacy policy above the log-in button and specifically state on the log-in screen that clicking "log-in" was an acceptance of the privacy policy. American's distinct treatment of the site usage policy is telling. It also shows that American easily could have included notice of and a link to the site usage policy on the log-in screen. It chose not to do so, and it must bear the consequences of that decision.

[5] American has not alternatively shown that the site usage policy could be enforceable as browsewrap. Plaintiff did not have actual notice of it, [ECF No. 126-1], and the link to it was inconspicuous and required scrolling through multiple pages to find it.

inapplicable to the insurance transaction at issue in this case because it is limited to transactions *with American Airlines*. [ECF No. 117-2] (Site Usage Policy, at "Limitations on your use," stating that site exists to "transact business with American Airlines"). Here, Plaintiff's transaction, by American's own admission, was with the third-party insurance company. And Plaintiff entered into a separate agreement with the insurer (the insurance policy), and American's site usage policy expressly says "the terms of the specific agreement [insurance policy] shall govern" over the site usage policy. [*Id.*] So the site usage policy is irrelevant even if Plaintiff did agree to it.

### C.  Public factors require venue to remain in Florida.

Even assuming that there is a valid forum-selection agreement (there isn't) and that American has not waived it (it has), public-interest factors necessitate transfer back to the Southern District of Florida. Even the existence of a valid forum-selection clause (which is lacking here) does not require transfer. Instead, the Court has discretion to enforce or not enforce a forum-selection clause. That discretion is guided by public-interest factors,[6] including "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981). These factors are not exhaustive. Any additional circumstances affecting the public interest may be considered.

---

[6] In the ordinary § 1404 analysis, not involving a forum-selection clause, courts evaluate both the convenience of the parties (i.e., private-interest factors) and public-interest factors. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62–63 (2013). This is because § 1404(a) requires a court to decide whether a transfer would serve "the convenience of the parties and the witnesses" *and* otherwise promote "the interest of justice." While the existence of a valid forum-selection clause extinguishes the private-interest factors from consideration, a court must still consider the public-interest factors. *Id.* at 63, 67–68.

Under the facts of this case, transfer was not in the public interest and does not promote the interest of justice. Most importantly, allowing the case to remain transferred in Texas would promote gamesmanship and hindsight forum-shopping. It is completely inequitable for a party to seek multiple rulings on the merits and then seek a transfer to another court only after receiving adverse rulings. "A party cannot sit on its forum selection rights, allowing a court to invest its resources in the resolution of the action, until such time as things go unfavorably. To allow late invocation of a forum selection clause would be to countenance forum shopping at its most wasteful." *E. & J. Gallo Winery v. Encana Energy Servs., Inc.*, 388 F. Supp. 2d 1148, 1161–62 (E.D. Cal. 2005).

Somewhat overlapping the waiver analysis, American's egregious delay in raising the issue is also relevant to the Court's discretion to re-transfer, even if there were a valid forum-selection clause (there is not). And that discretion is even further amplified where, as here, the transfer was based on a delayed motion and will lead to further delays and other prejudice. *See* Part A, *supra*. "[T]ransfer is disfavored when the issue is raised late in the case." *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 876 (E.D. Tex. 2013); *see also, e.g.*, *Perlman*, 451 F. App'x at 848; *Willis*, 2012 WL 12845648, at *2; *Apache Prods. Co. v. Emp'rs Ins. of Wausau*, 154 F.R.D. 650, 657 (S.D. Miss. 1994) ("[A] party's delay in seeking transfer may appropriately be considered in evaluating the motion since a delay in requesting transfer may impact other pertinent considerations, such as whether a transfer after substantial progression of the case in one forum would delay the ultimate resolution of the action or greatly diminish the value of judicial resources that have been expended in the matter."); *E. & J. Gallo*, 388 F. Supp. 2d at 1164 ("[I]t would be unfair in the extreme to Gallo to now invoke the forum selection clause after so much of the parties' (not to mention the court's) time and effort has been expended in discovery, the settlement of discovery disputes, and

24

the resolution of pretrial dispositive and non-dispositive motions.").

Also, on this record, it would be unfair, not only to Plaintiff, but also to this Court and the public interest to keep the case transferred in Texas at this late stage. The Florida court is intimately familiar with the record, facts, issues, and law in this case. Keeping the case in this new court will result in significant delay and duplication of judicial effort. *See Patent Harbor*, 2012 WL 1903875, at *4 (denying transfer where defendant delayed filing motion for ten months and during that time "the Court has become 'intimately familiar' with the matter"); *Am. Airlines, Inc. v. Rogerson ATS*, 952 F. Supp. 377, 384 (N.D. Tex. 1996) ("There is a substantial possibility of delay if this action is transferred to California since this Court has had the case for some time and is already familiar with many of its details.").[7] Not only is the belated transfer unfair to this Court; it is also unfair to other litigants before this Court whose cases will inevitably be delayed while this Court acclimates itself to the voluminous record in this complex case. And that is especially so when this district has the second-busiest civil docket in the entire Fifth Circuit.[8]

The very "goal of § 1404(a) is to 'prevent waste of time, energy, and money.'" *Patent Harbor*, 2012 WL 1903875, at *2 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). The transfer to this Court was anathema to that goal, and this Court should re-transfer it back.

## CONCLUSION

For the foregoing reasons, the Court should transfer this case to the Southern District of Florida.

---

[7] *IBEW-NECA Sw. Health & Ben. Fund v. Duvall Elec., LLC*, 2011 WL 711005, at *4 (N.D. Tex. Feb. 28, 2011) ("The Court finds that transferring the case will cause prejudice to the parties because key dates on the Scheduling Order, such as the dispositive motion deadline, which is two weeks away and the trial date, set in June, will be eliminated. Also, the Court finds that transferring the case at this stage of litigation will cause a duplication of efforts by this court and the transferee court as well as the parties.").

[8] https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2019.pdf.

Dated:  February 28, 2020                        Respectfully submitted,

*/s/  Roger L. Mandel*_____
Roger L. Mandel
State Bar N0. 12891750
JEEVES MANDEL LAW GROUP PC
12222 Merit Drive, Suite 1200
Dallas, Texas 75251
Tel: (214) 253-8300
Fax: (727) 822-1499
Email: rmandel@jeeveslmanellawgroup.com
Email: khill@jeeveslawgroup.com


*/s/ Alec H. Schultz*_____
Scott B. Cosgrove (pro hac vice pending)
  Fla. Bar No. 161365
Alec H. Schultz (pro hac vice pending)
  Florida Bar No. 35022
John R. Byrne (pro hac vice pending)
  Fla. Bar No. 126294
Jeremy L. Kahn (pro hac vice pending)
  Fla. Bar No. 105277
LEÓN COSGROVE LLP
255 Alhambra Circle, Suite 800
Coral Gables, Florida 33134
Telephone:  305.740.1986
Facsimile:  305.437.8158
Email:  scosgrove@leoncosgrove.com
Email:  aschultz@leoncosgrove.com
Email:  jbyrne@leoncosgrove.com
Email:  jkahn@leoncosgrove.com
*Counsel for Zamber and the Class*

26

## CERTIFICATE OF CONFERENCE

This motion is opposed. The undersigned Counsel for Plaintiff certifies that a conference between him and counsel for American, James E. Brandt, Esq., was held by email on February 27, 2020. An agreement could not be reached because American refuses to have this case transferred back to the Southern District of Florida.

/s/ Alec H. Schultz
Alec H. Schultz

## CERTIFICATE OF SERVICE

I certify that on February 28, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which in turn will serve a copy by notice of electronic filing to all counsel of record.:

Humberto H. Ocariz, Esq.
GREENBERG TRAURIG, P.A.
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Tel:  (305) 579-0590
Fax:  (305) 579-0717
Email: ocarizb@gtlaw.com

James E. Brandt, Esq.
Elizabeth (Betsy) Marks, Esq.
LATHAM & WATKINS, LLP
885 Third Avenue
New York, New York 10022-4834
Tel:  (212) 906-1200
Fax:  (212) 751-4864
Email: james.brandt@lw.com
Email: betsy.marks@lw.com

Dee J. Kelly, Jr., Esq.
Elizabeth A. Cuneo, Esq.
Lars L. Berg, Esq.
KELLY HART & HALLMAN
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Tel:  (817) 332-2500
Fax:  (817) 878-9280
Email:  Dee.kelly.2@khh.com
Email:  Elizabeth.cuneo@kellyhart.com
Email:  Lars.berg@kellyhart.com
*Counsel for Defendant American Airlines, Inc.*

Michael E. Bern, Esq.
Arielle B. Nagel, Esq.
LATHAM & WATKINS, LLP
555 Eleventh Street, N.W.
Suite 1000
Washington, D.C. 20004
Tel: (202) 637-2200
Email:  Michael.bern@lw.com
Email:  Arielle.nagel@lw.com

*Counsel for Defendant American Airlines, Inc.*

*/s/ Roger L. Mandel*_____

Roger L. Mandel