IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **KRISTIAN ZAMBER, on behalf of** | § | |
| **himself and all others similarly situated,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No.  4:20-cv-00114-O** |
| | § | |
| **AMERICAN AIRLINES, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## ORDER

Before the Court are Plaintiff's Motion to Re-Transfer and Brief in Support (ECF No. 497), filed February 28, 2020; American Airlines, Inc.'s Motion for Summary Judgment (ECF No. 516), filed April 23, 2020; and Plaintiff's Motion for Class Certification (ECF No. 527) (under seal), filed April 27, 2020. Having considered the motions, legal briefing, pleadings, evidence, record, and applicable law, the Court **DENIES** Plaintiff's Motion to Re-Transfer (ECF No. 497); **GRANTS** American Airlines, Inc.'s Motion for Summary Judgment (ECF No. 516); and **DENIES AS MOOT** Plaintiff's Motion for Class Certification (ECF No. 527).

## I.      BACKGROUND

While using American Airlines, Inc.'s ("American") website to purchase a ticket for air travel, Plaintiff Kristian Zamber ("Zamber") was offered the option to purchase travel insurance from Allianz Global Assistance ("Allianz"), which advertises its insurance on American's website. Zamber accepted the offer. When Zamber discovered that American received compensation from the money he paid Allianz, he initiated this putative class action lawsuit against American in the United States District Court for the Southern District of Florida on September 12, 2016. The matter was transferred to the undersigned on February 27, 2020. The gravamen of Zamber's complaint is

1

that American is required—but failed—to disclose the compensation it receives from Allianz in exchange for giving Allianz the right to sell insurance on its website. Zamber contends that American's failure to disclose its receipt of compensation from Allianz deceives consumers, unjustly enriches American, violates state insurance regulations, and amounts to criminal fraud. In his brief opposing American's Motion for Summary Judgment (ECF No. 541), Zamber accuses American of engaging in a "kickback scheme [that] operates clandestinely," Pl.'s Opp'n Br. 1. American asserts that Allianz's agreement to pay it a fee for the right to place its advertisement on American's website is "an entirely unexceptional contractual arrangement," and "no different than the fees paid by any other retailers to newspapers, broadcasters, and websites like Amazon for the right to advertise and sell through their platforms." Def.'s Summ. J. Br. 1, ECF No. 526.

The Court now sets forth the relevant facts viewed in the light most favorable to Zamber, the nonmoving party. *See* FED. R. CIV. P. 56(c).

### A.    Factual Background

American sells airline tickets to customers on its website, www.aa.com. Def.'s Sealed App. 960, ECF No. 525.[1] American has entered into a Marketing Agreement with Allianz pursuant to which American provides space on its website for Allianz to offer travel insurance policies to American's customers. Def.'s Sealed App. 92–121 (Marketing Agreement), ECF No. 525. Allianz is a licensed insurance producer that is authorized to solicit, negotiate, and sell insurance policies on behalf of certified insurers, including Jefferson Insurance Company ("Jefferson") and BCS Insurance Company. *Id.* at 1007, 1022.

---

[1] American has filed separate appendices in support of its Motion for Summary Judgment—one volume under seal (ECF No. 525) and three volumes not under seal (with redactions) (ECF Nos. 518–20)—as well as a sealed appendix in support of its response to Plaintiff's Motion for Class Certification (ECF No. 540), and two volumes not under seal (ECF Nos. 530–31).

Under the Marketing Agreement, Allianz agrees to sell, provide, and administer travel protection programs including assistance services and insurance coverage (collectively, "trip insurance") to travelers. This includes collection of premiums and delivering confirmations of coverage. Allianz is responsible for complying with all legal requirements related to the Marketing Agreement, including those applicable to the provision and sale of insurance. *Id.* at 96 (Marketing Agreement § 2.11).

For its part, at no additional cost to Allianz, American agrees to provide "marketing support" for Allianz, "by using banners, buttons or links in email messages" or on its website. *Id.* at 96 (Marketing Agreement § 3.1). In addition, American agrees it "will not publish, post, distribute, or broadcast" any information referring to Allianz, or any benefits of Allianz's services, without the affirmative approval and written consent of Allianz. *Id.* at 97 (Marketing Agreement § 3.4). American also agrees it will make no representations to travelers concerning coverage of insurance products but must direct inquiries to Allianz's service representatives. *Id.* at 97 (Marketing Agreement § 3.5).

Pursuant to the Marketing Agreement, American receives a monthly advertising fee from Allianz. On or before the twenty-fifth day of each calendar month, American receives a report summarizing the trip-insurance transactions and remittances of the advertising fees. *Id.* at 94 (Marketing Agreement § 2.3). American receives such fees regardless of whether the customer later decides not to purchase or cancels, and regardless of whether coverage is accepted or denied by Allianz. *Id.* at 115 (Marketing Agreement at Ex. B). American's fees amount to approximately fifty percent of the price of premiums that consumers pay Allianz for trip insurance. Pl.'s Sealed App. A0123, ECF No. 542.

American sells Allianz's trip insurance to American's customers through an offer box on the "booking path" on its website. The booking path is a series of webpages that customers click through to book airline tickets. Def.'s Sealed App. 957–58, 1117–22, ECF No. 525. Allianz determines what trip insurance products to offer on American's website, with what terms and conditions, and at what price. *Id.* at 958, 1144–45; Am. Compl. ¶ 55, ECF No. 296. Allianz is also responsible for the content of the offer box in which its trip insurance offer is presented. Def.'s Sealed App. 958, 1127–28, 1165–66, ECF No. 525. American, however, retains certain rights to ensure that the look and feel of the offer box is consistent with the stylistic requirements of American's booking path and overall tone of the website. Pl.'s Sealed App. 73–74, ECF No. 542; Def.'s Sealed App. 958, ECF No. 525. When consumers buy trip insurance, they pay Allianz directly at the price set by Allianz alone. Am. Compl. ¶¶ 53, 55, ECF No. 296; Def.'s Sealed App. 1144–45, 1235–36, 1240–42, ECF No. 525. American sets no price, imposes no charge, provides no insurance services, and enters into no contract with a consumer with respect to trip insurance. Am. Compl. ¶¶ 55, 57–58, ECF No. 296; Def.'s Sealed App. 958–59, 1022–23, 1144–45, 1159–61, ECF No. 525.

Each state and the District of Columbia have their own specific requirements for insurance-rate filings. Def.'s App. 1025 (Vol. III), ECF No. 520. The insurers underwriting Allianz's policies, Jefferson and BCS Insurance Company, submit proposed rate filings to appropriate governmental entities—including in this instance the Florida Office of Insurance Regulation ("OIR")—relating to travel insurance sold on American's website. Def.'s Sealed App. 1155, ECF No. 525. Because trip insurance protects against risks such as cancellation of the airline ticket, the charged premium corresponds to the ticket price. Def.'s App. 124–39 (Vol. II) (Jefferson's rate filing detailing premium calculation approved by Florida OIR), ECF No. 519. The prices Allianz

charges for trip insurance are "reasonable and competitive when compared to similar products offered in the marketplace," both by Allianz and its competitors. *Id.* at 169. The price is often "among the least expensive travel products offered in the marketplace." *Id.*

On March 20, 2016, Zamber purchased trip insurance from Allianz on American's website. Am. Compl. ¶¶ 55, 59, ECF No. 296. Zamber believes the offer "probably" had "similar" content to the example offer box attached to his complaint:

Def.'s App. 1 (Vol. I), ECF No. 518; *id.* at 1216–18 (Vol. III), ECF No. 520.

It is undisputed that Allianz fully honored its contractual obligations and that Zamber received the coverage and services for which he contracted. *Id.* at 1188, 1229–30. At his deposition, Zamber was unable to identify any way in which he would have suffered an injury if Allianz had retained the money he paid it for his trip insurance, rather than taking a portion of it to pay American in exchange for advertising on its website. *Id.* at 1249–50. He testified at his deposition that he did not think about the language on American's website or the nature of American's relationship to Allianz when purchasing the policy, stating that the "arrangement" between American and Allianz "didn't even cross [his] mind." *Id.* at 1213–15. It is undisputed that after counsel Leon Cosgrove contacted Zamber in July or August 2016 and told him that American

received compensation from Allianz—after which Zamber decided to participate in this lawsuit—Zamber purchased additional trip insurance on American's website. *Id.* at 1197–98.

**B.     Procedural History**

Zamber filed this putative class action lawsuit in September 12, 2016, in the United States District Court for the Southern District of Florida, asserting claims for violation of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), Florida Statute § 501.201 *et seq.*, and unjust enrichment. He alleged that American "falsely represents to its customers that, when they purchase an insurance policy, the funds to cover the policy's costs are transmitted to Allianz," when in truth, American was "retaining a portion of this charge for itself." Compl. ¶¶ 9, 38, ECF No. 1. American moved to dismiss based on: (1) lack of standing; (2) failure to state a claim; and (3) preemption. In response, Zamber argued he had standing because his case was on all fours with a Florida state court case in which a cruise line collected "port charges" from passengers but allegedly passed through only a portion of the charges to the port. *See Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699, 701–03 (Fla. Dist. Ct. App. 2000). Relying on *Latman*, the magistrate judge, to whom the motion to dismiss was referred, recommended the case be allowed to proceed, although he recognized that the question of whether to grant American's motion to dismiss was a "close one." Report & Recommendation 2, ECF No. 65. The magistrate judge also noted that many of Zamber's allegations were overstated or false, and that discovery could put him "on the losing side of a summary judgment motion." *Id.* at 2, 6–9, 12, ECF No. 65. On October 17, 2017, the Honorable Jose E. Martinez accepted the recommendation of the magistrate judge and denied American's motion to dismiss without prejudice. Order, ECF No. 79.

On December 8, 2017, American filed its Answer in which it pleaded that, pursuant to a forum selection clause, "Plaintiff has agreed that the proper venue for any lawsuit arising from

Plaintiff's access to, dealings with, or use of the American Airlines website or mobile application must be brought in the state or federal courts of Tarrant County, Texas, and that Texas law will govern his claims." Answer ¶ 106, ECF No. 95. Relying on the forum selection clause, American filed a motion to transfer venue to the Northern District of Texas. That motion was pending on September 17, 2018, when, the parties notified Judge Martinez that they had reached an agreement in principle on the financial terms of a class settlement. That day, Judge Martinez directed the clerk to deny all pending motions as moot. After settlement negotiations collapsed, American filed a motion asking the Court to restore the case to its active docket, which Judge Martinez granted.

Before Judge Martinez addressed American's then-pending motion to transfer venue, however, Zamber filed an Amended Complaint, the live pleading, on June 28, 2019. The Amended Complaint, filed after some discovery, recognizes that, unlike in *Latman*—in which a cruise line collected "port charges" from passengers but allegedly passed through only a portion of the charges to the port—American did not impose any fee on Zamber or collect any money from him. Instead, the Amended Complaint alleges that consumers purchase trip insurance exclusively from Allianz, at a price set only by Allianz, and transmit funds directly and exclusively to Allianz, for insurance services provided only by Allianz. Am. Compl. ¶¶ 55–57, ECF No. 296. In lieu of analogizing to *Latman*, the case upon which he originally relied to assert he had standing, Zamber instead asserted that the "offer box" deceptively gives a reasonable consumer the net impression that American has no financial interest in Allianz's sale of trip insurance on its website. He also alleges that American is defrauding customers and insurance regulators by failing to disclose that Allianz pays it a portion of the amount it receives for trip insurance pursuant to the terms of the Marketing Agreement. *See generally id.* In addition to his previous claims for violations of FDUTPA (Count I) and unjust enrichment (Count II), in the Amended Complaint, Zamber adds

alleged violations of the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act (Count III); RICO conspiracy (Count IV); and violation of Florida's Civil Remedies for Criminal Practices Act ("Florida RICO") (Count V).[2] American filed a motion to dismiss the Amended Complaint, which Judge Martinez never decided.

In compliance with the scheduling order, Zamber subsequently filed a motion for class certification and American filed motions to dismiss and for summary judgment. Judge Martinez ultimately referred all pretrial motions to the magistrate judge, who required American to refile its motion to transfer venue.

In support of its motion to transfer venue to the Northern District of Texas, American noted that Zamber, when he purchased his ticket and the trip insurance, had agreed to the "terms and conditions" of American's AAdvantage frequent flier program. Agreeing to the terms and conditions bound Zamber to a site usage policy that provided: (1) any lawsuit related to his access to, dealings with, or use of American's website must be brought in the state or federal courts of Tarrant County, Texas; (2) Texas law would govern any such dispute; and (3) Plaintiff would not bring any class action lawsuit related to any such dispute. American's First Mot. to Transfer at Ex. B ("Site Usage Policy"), ECF 117-1. The magistrate judge denied American's request to transfer.[3]

---

[2] The Court has federal question jurisdiction over Zamber's RICO claims and supplemental jurisdiction over his state law claims. 28 U.S.C. §§ 1331, 1367. Zamber has also alleged that the Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). He estimates that there are "hundreds of thousands" of class members and alleges that the amount in controversy exceeds $5,000,000.00. Am. Compl. ¶¶ 8, 66, ECF No. 296. He alleges that he is a citizen of Florida, and that American is a citizen of Delaware (its state of incorporation) and Texas (the location of its principal place of business). *Id.* ¶¶ 7–8. Based on Zamber's allegations, the Court concludes that at least one plaintiff is "a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). As such, the Court concludes it also has subject matter jurisdiction under CAFA. American does not dispute federal jurisdiction exists.

[3] The magistrate judge had recommended that the district court deny American's motion to transfer. He concluded that American waived any right it may have had under a forum selection clause because it engaged in significant delay in raising the issue and that, "[b]ased on the substantial record of this case, it would be unfair, not only to Plaintiff, but also to the transferee federal district court in Texas and the public interest, to transfer the case at this late stage."  Order 29–39, 42, ECF No. 457.

On February 11, 2020, Judge Martinez rejected the recommendation of the magistrate judge and granted American's motion to transfer venue from the Southern District of Florida to the Northern District of Texas. He determined that American's Site Usage Policy was enforceable and that Zamber had agreed to it, requiring litigation of this action in the state or federal courts of Tarrant County, Texas. *Zamber v. Am. Airlines, Inc.*, No. 16-23901-CV-MARTINEZ/Goodman, 2020 WL 1445479 (S.D. Fla. Feb. 11, 2020). He further found that "a failed settlement, administrative closing, and judicial delay are the primary reasons [American's] transfer motion was not resolved earlier." *Id.* at *2. In addition, he noted that "no substantive issues have yet been resolved despite the age of the case[,] [and the] case is nowhere near trial-ready." *Id.* Finally, he concluded that even in the absence of the forum selection clause, the private and public interest factors under 28 U.S.C. § 1404(a) weighed in favor of transfer to the Northern District of Texas. *Id.*

At the time of transfer, several substantive motions were pending. Pursuant to the undersigned's February 28, 2020 order directing the parties to refile any motions they wished to pursue in this forum, Zamber filed a Motion to Re-Transfer as well as a Motion for Class Certification. American asserted the arguments previously raised in its motion to dismiss and its motion for summary judgment, "some of which are legal and others of which are premised on the factual record following discovery," into a single Motion for Summary Judgment. Def.'s Summ. J. Br. 1 n.1, ECF No. 526.

## II.    Zamber's Motion to Re-Transfer (ECF No. 497)

Zamber moves the Court to re-transfer this matter to the Southern District of Florida. He maintains that Judge Martinez erred in rejecting the magistrate judge's recommendation to deny American's motion to transfer venue. According to Zamber, "because the purported forum-

selection clause is unenforceable as a matter of law, it was improper for this case to be foisted upon this Court, and this Court should transfer this case back to Plaintiff's chosen forum, the Southern District of Florida." Pl.'s Mot. to Re-Transfer 1–2, ECF No. 497. American counters that Zamber "does not meet the standard for retransfer[]" and "ignores that Judge Martinez also found transfer was warranted under the Section 1404(a) factors even if there was no forum selection clause." Def.'s Resp. Mot. Re-Transfer 1–2, ECF No. 512. American also contends that Zamber's "failure to address that independent basis for Judge Martinez's decision is alone reason enough to deny his motion." *Id.* at 2. For the reasons that follow, the Court agrees with American.

In the Fifth Circuit, "the decision of a transferor court [to transfer a case] should not be reviewed again by the transferee court." *In re Cragar Indus., Inc.*, 706 F.2d 503, 505 (5th Cir. 1983). When a "motion to transfer is granted and the case is transferred to another district, the transferee-district should accept the ruling on the transfer as the law of the case and should not re-transfer 'except under the most impelling and unusual circumstances' or if the transfer order is 'manifestly erroneous.'" *Id.* (quoting *United States v. Koenig*, 290 F.2d 166, 173 n.11 (5th Cir.1961), *aff'd*, 396 U.S. 121 (1962)). "Policies supporting the law of the case doctrine apply with 'even greater force to transfer decisions than to decisions of substantive law' because 'transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation.'" *Quicksilver Res., Inc. v. Eagle Drilling, LLC*, No. H-08-068, 2008 WL 3165745, at *5 (S.D. Tex. Aug. 4, 2008) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988)).

Because Judge Martinez already decided to transfer this case to the Northern District of Texas, this Court will not revisit the issue of transfer unless it finds that impelling and unusual circumstances for retransfer exist or that the transfer order was manifestly erroneous. Impelling

and unusual circumstances arise when "unanticipatable post-transfer events frustrate the original purpose for transfer." *In re Cragar Indus.*, 706 F.2d at 505.

Zamber has not identified any post-transfer events that would frustrate the original purpose of the transfer. Zamber also has not established that the transfer order was manifestly erroneous. Additionally, in his motion, Zamber fails to address Judge Martinez's finding that, even absent the forum selection clause, transfer was warranted under the public and private interest factors under 28 U.S.C. § 1404(a). As American correctly asserts, this alone provides a basis to deny Zamber's motion. Finally, after considering the factors relevant to a 28 U.S.C. § 1404(a) motion in the first instance, the Court concludes the transfer order was appropriate under the circumstances.

Accordingly, the Court **DENIES** Plaintiff's Motion to Re-Transfer Venue.

### III.   American's Motion for Summary Judgment

American contends there is no genuine dispute of material fact and it is entitled to judgment as a matter of law on all Zamber's claims in the Amended Complaint because Zamber lacks Article III standing and, additionally, the relief he seeks is barred by the filed-rate doctrine. In addition, American argues Zamber's claims under RICO are barred by the McCarran-Ferguson Act and, alternatively, he cannot satisfy the elements of a federal RICO claim as a matter of law. With respect to Zamber's state law claims, American contends that his claims under Florida law are preempted by the Airline Deregulation Act and, in any event, forbidden by the Texas choice-of-law clause to which he assented; that Zamber's FDUTPA claim is barred by the statute's insurance exception, and he cannot satisfy the elements of a FDUTPA claim as a matter of law; that his unjust enrichment claim is foreclosed for lack of a cause of action and, even if it were not, he cannot establish the unjust enrichment elements as a matter of law; and that he cannot satisfy the elements of his Florida RICO claim as a matter of law.

### A.  Applicable Legal Standard

Summary judgment is proper when the pleadings and evidence on file show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant makes a showing that there is no genuine dispute as to any material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(c).

When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55. As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Anderson*, 477 U.S. at 250.

### B.  Analysis

#### 1.  Standing

The Court first turns to the threshold issue of standing. American maintains that Zamber lacks standing to bring this action because he cannot satisfy his burden to demonstrate either an injury in fact or traceability. For this reason, American asserts this action must be dismissed.

Zamber responds that he has suffered injury because he was misled into paying a "pass-through" charge and that he paid an inflated price. Pl.'s Opp'n Br. 14–15, 34–35, 39–41, ECF No. 541. For the reasons that follow, the Court disagrees with Zamber and finds that, even viewing all facts in the light most favorable to Zamber, he lacks standing. There are no facts demonstrating Zamber suffered an injury, let alone an injury traceable to American's conduct.

Article III of the Constitution limits the exercise of the judicial power to "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1. "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, — U.S. —, 126 S. Ct. 1540, 1547 (2016). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* (citations omitted). "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "The party invoking federal jurisdiction bears the burden of establishing" that it has standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To satisfy the "irreducible constitutional minimum" of standing under Article III, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 126 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). To meet that burden "at the summary judgment stage," a plaintiff may not "rest on mere allegations but must set forth by affidavit or other evidence specific facts demonstrating each of these requirements." *Clapper*, 568 U.S. at 412 (citation and internal

quotation marks omitted). American contends that Zamber cannot satisfy his burden to establish either injury in fact or traceability.

To show injury in fact, a plaintiff must allege "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 126 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). "Merely asking for money does not establish an injury in fact." *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002). When a party receives "exactly what [he] paid for," and thereby "received the benefit of [his] bargain," he has not sustained "an economic injury that satisfies Article III standing." *Wendt v. 24Hour Fitness USA, Inc.*, 821 F.3d 547, 550–51 & n.10 (5th Cir. 2016). In addition to showing injury in fact, to satisfy Article III standing, a plaintiff's "injury [must] be fairly traceable to the challenged action of the defendant," and not the "independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (citation and internal alterations omitted).

It is undisputed that Allianz fully honored its contractual obligations and that Zamber received the coverage and services for which he contracted. Def.'s App. 1188, 1229–30 (Vol. III), ECF No. 520. With respect to his claims premised on alleged deception, therefore, he cannot dispute that he received the benefit of his bargain and suffered no injury. *See Wendt*, 821 F.3d at 550–51 & n.10; *Rivera*, 283 F.3d at 319–21; *Flores v. United Airlines*, 426 F. Supp. 3d 520, 532 (N.D. Ill. 2019) ("Plaintiff has alleged she purchased travel insurance, and she alleges she received the travel insurance. So long as she received the benefit of the bargain, she was not injured."); *Donoff v. Delta Air Lines, Inc.*, No. 18-81258-CV-MIDDLEBROOKS/Brannon, 2020 WL 1226975, at *10 (S.D. Fla. Mar. 6, 2020) ("*Donoff II*") (holding that the plaintiff "failed to show actual injury" when he "admitted that the price of the insurance was set by Allianz, that he paid Allianz, and that he received the trip insurance from Allianz").

For his claims premised on alleged violations of Florida's licensing regulations, Zamber does not attempt to demonstrate any injury. At his deposition, he admitted that he would not have suffered an injury if Allianz had retained his payment (rather than paying American a fee under the Marketing Agreement), and also that he had no right to control what Allianz did with the funds he paid them for trip insurance. Defs.' App. 1227–28, 1249–50 (Vol. III), ECF No. 520. In addition, Florida law makes clear that the types of violations Zamber alleges would have no impact on the validity of his insurance contract with Allianz. *See* Fla. Stat. Ann. § 626.141 (West 2019) ("An insurance contract which is otherwise valid and binding as between the parties thereto shall not be rendered invalid by reason of having been solicited, handled, or procured by or through an unlicensed agent or customer representative or an agent or customer representative who has not been appointed.").

The Court also rejects Zamber's attempt to assert he has suffered an injury by being misled into paying a "pass-through" charge based on *Latman* and other cases like it. As previously discussed, in *Latman*, a cruise line charged its passengers a "port charge"—a "term [that] necessarily constitute[d] a representation to a reasonable consumer" that the fee was imposed by, and would be transferred to, "the relevant port authorities," when in fact the cruise line was "keep[ing] part of the money for itself." 758 So. 2d at 703. The court likened the deception to a retailer that "systematically overcharges its customers on sales tax," transferring to "the state [only] the sales tax that it owes" while "keep[ing] the overcharge for itself." *Id.* Recently, however, in a case with nearly identical facts to this case, a federal district court in Florida, applying Florida law, rejected the argument that the arrangement between American and Allianz amounts to a pass-through arrangement. *See Donoff II*, 2020 WL 1226975, at *19. The Court similarly concludes that

15

this case is nothing like *Latman* or other pass-through cases in which a retailer charges and collects a certain fee while making "misrepresentations about why [the] fee is being charged and where the money for the fee is being transferred." *Harrison v. Lee Auto Holdings, Inc.*, — So. 3d —, 2020 WL 2054612, at *4 (Fla. Dist. Ct. App. Apr. 29, 2020) (quoting *Waste Pro USA v. Vision Constr. ENT, Inc.*, 282 So. 3d 911, 920 (Fla. Dist. Ct. App. 2019)). In those instances, the retailer gives the fee a label suggesting that the fee is imposed by, and being transferred to, a third party (often the government) when in reality the fee (or a portion of it) is being "retained" by the retailer itself "as profit." *Id.* at *3. In contrast, as American notes in its reply brief:

> American neither imposed a special fee on consumers that it represented would go to Allianz, nor collected and retained one. Indeed, it is undisputed that American set no price, collected no charge, and entered into no contract with any consumer with respect to trip insurance. Rather, Plaintiff admits that he paid Allianz alone a price set by Allianz, while entering into a contract solely with Allianz. *See* Opp. 48–49 (acknowledging that "Plaintiff's transaction . . . was with the third-party insurance company," not American). And, as the court recognized in *Donoff II*, "[t]here was no representation about the components of the premium." 2020 WL 1226975 at *19.

Def.'s Reply Br. 5, ECF No. 537.[4]

---

[4] As previously explained, based on Zamber's allegations in the original complaint, the magistrate judge, to whom American's original motion to dismiss was referred, recommended the case be allowed to proceed. Report & Recommendation, ECF No. 65. With respect to American's challenge to Zamber's standing, relying on *Latman*, the magistrate judge stated, "Plaintiff pleads an injury in fact because he seeks recovery of the portion of his premium that American kept despite making representations about the trip insurance premium that a consumer could reasonably interpret as a 'pass through' charge, to which he is entitled under Florida law." *Id.* at 11. He also noted, "[t]his conclusion, of course, is based only on the allegations. *If it turns out that the critical allegations and the fundamental theory are incorrect*, then Plaintiff may not actually have standing (or he may be on the losing side of a summary judgment motion)." *Id.* (emphasis added). On October 17, 2017, Judge Martinez accepted the recommendation and denied American's motion to dismiss without prejudice. Order, ECF No. 79. Now, the summary-judgment evidence disproves Zamber's critical allegations and the fundamental theory that American collected the premiums from Zamber and retained a portion. Even the Amended Complaint recognizes that American did not impose any fee on Zamber or collect any money from him. Am. Compl. ¶¶ 55–57, ECF No. 296. As the allegations upon which the magistrate judge based his recommendation have proven to be incorrect following discovery, the Court concludes his recommendation, and Judge Martinez's decision to accept his recommendation, are not controlling.

With respect to his argument that he has standing because he paid an inflated price, even viewing all evidence in the light most favorable to Zamber, the Court determines he has failed to marshal evidence that the amount he paid was inflated. The evidence before the Court demonstrates that the prices charged by Allianz for trip insurance on American's website are "reasonable and competitive when compared to similar products offered in the marketplace," both by Allianz and its competitors. Def.'s App. 169 (Vol. II), ECF No. 519. The price is often "among the least expensive travel products offered in the marketplace." *Id.* Zamber admits he has undertaken no analysis comparing his plan's cost with other comparable plans in the market. Def.'s Class Cert. Opp'n App. 738–40, ECF No. 530. Although he alleges that he overpaid for his trip insurance, *see* Am. Compl. ¶¶ 52, 102, 118, 132, ECF No. 296, Zamber has no evidence—let alone expert evidence—showing that he could have acquired a comparable trip insurance plan directly from Allianz or a third party that would have been cheaper than the plan he acquired via www.aa.com. *See* Def.'s Class Cert. Opp'n App. 737–40. ECF No. 530.

A federal district court in Illinois also rejected an argument similar to Zamber's contention that he paid an inflated price because of advertising fees. *See Flores*, 426 F. Supp. 3d at 532 n.4. In that case, the court rejected this same theory of price inflation—raised by a passenger who bought trip insurance on United Airline's website—as "not plausible." *Id.* The court explained that if a consumer chooses to pay more for a product conveniently marketed on an airline's website, he necessarily receives something of value from that convenience. *Id.* The Court finds the reasoning of *Flores* persuasive.

Even were Zamber able to satisfy the requirement that he suffered an injury in fact, the Court agrees with American that Zamber cannot show the injury was "fairly traceable" to American. *Spokeo*, 136 S. Ct. at 1547. As previously explained, it is undisputed that Allianz, not

American, sets the price for trip insurance, and that Zamber entered into a contract for trip insurance with Allianz, not American. Am. Compl. ¶¶ 53, 55, ECF No. 296; Def.'s Sealed App. 1144–45, 1235–36, 1240–42, ECF No. 525. Moreover, it is undisputed that American sets no price, imposes no charge, provides no insurance services, and enters into no contract with a consumer with respect to trip insurance. Am. Compl. ¶¶ 55, 57–58, ECF No. 296; Def.'s Sealed App. 958–59, 1022–23, 1144–45, 1159–61, ECF No. 525. It is also undisputed that, pursuant to the Marketing Agreement, Allianz, not American, ensures compliance with all regulatory obligations. Def.'s Sealed App. 96, 1132-33, ECF No. 525.

Zamber contends these facts are "irrelevant." Pl.'s Opp'n Br. 41, ECF No. 541. The Court disagrees. To have standing, Plaintiff's "injury [must] be fairly traceable to the challenged action of the defendant," not the "independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (emphasis added) (citation and internal alterations omitted). Any conceivable injury Zamber suffered from price inflation on these undisputed facts is not "fairly traceable" to American, but the "result of the independent action" of Allianz, a third party "not before the court." *Id.*

Zamber has, therefore, failed to meet his burden at the summary-judgment stage of demonstrating he suffered an injury in fact or that any injury was "fairly traceable to the challenged action of the defendant," and not the "independent action of some third party not before the court." *Lujan*, 504 U.S. at 560. Accordingly, the Court concludes that Zamber lacks Article III standing and his claims are, therefore, dismissed without prejudice.[5]

---

[5] Because this suit does not present a justiciable case or controversy under Article III, the Court does not reach the class-certification question and expresses no view on its merits. *See Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020) ("[I]f it is the class representative who presents a standing problem, then that standing issue must be addressed first, prior to deciding class certification. After all, if the class representative lacks standing, then there is no Article III suit to begin with—class certification or otherwise." (emphasis in original) (citations omitted)); *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*,

### 2. The Filed-Rate Doctrine

American also argues that, even if Zamber had standing to seek a recovery of his premium, the filed-rate doctrine bars that recovery. The Court agrees.

"The filed-rate doctrine prevents state-regulated entities from charging rates other than those mandated by the proper authority." *Peacock v. AARP, Inc.*, 181 F. Supp. 3d 430, 439 (S.D. Tex. 2016) (quoting *Winn v. Alamo Title Ins. Co.*, 372 F. App'x 461, 462–63 (5th Cir. 2010)). The doctrine serves two core functions: (1) it "prevents regulated companies from engaging in price discrimination between customers," and (2) it "preserves the exclusive role of regulatory agencies in approving rates and keeping courts, which are far less competent to perform this function, out of the rate-making process." *Winn v. Alamo Title Ins. Co.*, No. A-09-CA-214-SS, 2009 WL 7099484, at *4 (W.D. Tex. May 13, 2009), *aff'd*, 372 F. App'x 461 (5th Cir. 2010). In line with these two principles, the filed-rate doctrine bars all "claims [that] implicate the reasonableness of the filed rates." *Korte v. Allstate Ins. Co.*, 48 F. Supp. 2d 647, 652 (E.D. Tex. 1999). Thus, the doctrine bars not only claims that "directly attack [a] filed rate" but also claims that "effectively implicat[e] the validity of the rates," including claims purportedly "seeking 'to recover for substantially illegal overcharges,'" *Winn*, 2009 WL 7099484, at *9 (citation omitted), and claims that "effectively contest[] the inclusion of certain charges in (or the omission of certain discounts from) a rate filed with the appropriate administrative agency," *Donoff II*, 2020 WL 1226975, at *6 (quoting *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1323 (11th Cir. 2018)).

As American explains in its summary judgment motion:

Courts have accordingly held that the filed-rate doctrine bars any claim (state or federal) premised on the theory that "premiums" are "artificially inflated" because they include "the cost of 'kickbacks.'" *Patel*, 904 F.3d at 1326 (internal alterations

---

301 F.3d 329, 333 (5th Cir. 2002) ("The question of Article III standing must be decided prior to the prudential standing and class certification issues raised in this appeal, because it determines the court's fundamental power even to hear the suit."(citation and internal quotation marks omitted)).

omitted); *see also Donoff II*, 2020 WL 1226975, at *6 (barring claims contesting the "advertising fee paid to Delta"); *Peacock*, 181 F. Supp. 3d at 439–40 (barring claims alleging that "after the rates are paid by the members, AARP retains a portion of the amount"); *see also Winn*, 2009 WL 7099484, at *5–6 (collecting cases).

Def.'s Summ. J. Br. 17, ECF No. 526.

In this case, the trip insurance component of Zamber's policy was filed and approved by state regulatory agencies. Zamber's claims rest on the theory that "the [trip] insurance premium price includes a large kickback to American." Am. Compl. ¶ 102, ECF 296. Having considered the case law cited by American, as well as the evidence presented, the Court agrees with American that Zamber's "challenges to the premiums he paid for trip insurance are thus 'textbook example[s] of the type of claim[s]' barred by the filed-rate doctrine." Def.'s Summ. J. Br. 18, ECF No. 526 (quoting *Donoff II*, 2020 WL 1226975, at *6).[6]

### 3. Recent Case Law

In light of the Court's determination that Zamber lacks standing and, alternatively, that his claims seeking money damages are barred by the filed-rate doctrine, the Court need not reach the remaining arguments made by American in support of its Motion for Summary Judgment. The Court notes, however, that numerous courts that have considered nearly identical claims in putative nationwide class actions against several of the nation's largest airlines—many brought by

---

[6] Zamber contests whether a filed rate exists in this case, and he presents evidence that pricing was done as a percentage of a customer's airline price. Pl.'s Opp'n Br. 38–39, ECF No. 541. As American argues, however, "whether or not insurance is priced by reference to the price of an airline ticket has nothing to do with whether a filed rate exists." Def.'s Reply Br. 8, ECF No. 537. It is undisputed that the insurers underwriting Allianz's policies, Jefferson and BCS Insurance Company, submit proposed rate filings to appropriate governmental entities, including in this instance the Florida OIR, relating to travel insurance sold on American's website. Def.'s Sealed App. 1155, ECF No. 525. As trip insurance protects against such risks as cancellation of the airline ticket, the charged premium corresponds to the ticket price. Def.'s App. 124–39 (Vol. II) (Jefferson's rate filing detailing premium calculation approved by Florida OIR), ECF No. 519.

Zamber's counsel—have rejected those claims for the reasons set forth in American's motion. *See, e.g., Donoff v. Delta Air Lines, Inc.*, No. 18-CV-81258 (S.D. Fla. July 9, 2019) (ECF No. 121) ("*Donoff I*") (dismissing RICO claims in entirety, and dismissing FDUTPA and unjust enrichment claims premised on alleged insurance law violations); *Donoff II*, 2020 WL 1226975 (granting summary judgment on all remaining claims); *Flores*, 2019 WL 6716608 (dismissing all claims, including RICO, Illinois Consumer Fraud and Deceptive Practices Act, and unjust enrichment); *Dolan v. JetBlue Airways Corp.*, 385 F. Supp. 3d 1338 (S.D. Fla. 2019) (dismissing RICO and FDUTPA claims premised on alleged insurance code violations). Zamber makes little to no effort to distinguish these cases, and the Court finds them persuasive.

Thus, even assuming that Zamber had standing and that the filed-rate doctrine did not bar his attempts to recover a portion of his premium, summary judgment in American's favor would still be warranted on his claims.

### 4.  Choice-of-Law Provision

Alternatively, the Court concludes that American is entitled to judgment as a matter of law with respect to Zamber's state law claims. As Judge Martinez concluded in granting American's motion to transfer venue, when logging into his AAdvantage account on American's website, Zamber "assent[ed] to the AAdvantage terms and conditions," which expressly provided that "[b]y accessing your AAdvantage account on AA.com, you agree to the AA.com site usage policy." *Zamber*, 2020 WL 1445479, at *3.   As previously explained, American's Site Usage Policy includes a forum selection clause, class action waiver, and a choice-of-law provision which provides: "You agree that Texas law governs this Agreement's interpretation and/or any dispute arising from your access to, dealings with, or use of the Site, without regard to conflicts of law principles." Def.'s App. 320 (Vol. I), ECF No. 518.

Judge Martinez held that Zamber's agreement to the site usage policy is enforceable and applicable to this lawsuit. *Zamber*, 2020 WL 1445479, at \*3. Nothing filed by Zamber persuades this Court that Judge Martinez's reasoning was erroneous. By agreeing to the AAdvantage terms and conditions and the Site Usage Policy, Zamber agreed that this "dispute"—which "aris[es] from" his "access to, dealings with, or use of [American's website]"—is governed by Texas law. Def.'s App. 320 (Vol. I), ECF No. 518.

Moreover, the Court rejects Zamber's argument that American waived its right to enforce the choice-of-law provision. American first raised the choice-of-law provision in its December 2017 Answer, approximately two years before seeking summary judgment. Judge Martinez, therefore, had adequate time to consider the argument. *See Ferguson v. FDIC*, 164 F.3d 894, 897 (5th Cir. 1999) (A defendant need only "call the applicability of another state's law to the [district] court's attention in time to be properly considered.") (alteration in original) (citation omitted); *Robbins Hardwood Flooring, Inc. v. Bolick Distributors, Corp.*, No. 3:02-cv-1124-H, 2003 WL 21730142, at \*2 (N.D. Tex. Mar. 18, 2003), *aff'd in part*, 79 F. App'x 81 (5th Cir. 2003) ("[A] party wishing to preserve a choice of law question does have the obligation to call the applicability of another state's law to the court's attention in time to be properly considered.") (internal quotation marks and citation omitted).[7]

Because Texas law governs, Zamber's state law claims—all of which assert causes of action under Florida rather than Texas law—must be dismissed.

---

[7] The Court rejects Zamber's request to allow him to add Texas claims in the event the Court concludes the choice-of-law provision is enforceable. This lawsuit has been pending since 2016. Not only is it too late to amend the pleadings, but Zamber fails to explain how his allegations would survive summary judgment under Texas law.

## IV.      CONCLUSION

Based on the foregoing, Plaintiff's Motion to Re-Transfer (ECF No. 497) is **DENIED**;

American Airlines, Inc.'s Motion for Summary Judgment (ECF No. 516) is **GRANTED**; and

Plaintiff's Motion for Class Certification (ECF No. 527) is **DENIED AS MOOT**. Because Zamber

has failed to establish Article III standing, his claims asserted in the Amended Complaint (ECF

No. 296) are hereby **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED** on this **11th day** of **June, 2020**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**